POST and others *v.* DORR and others.

---

Where an injunction is granted and a receiver is appointed and no motion is made to dissolve the one or to get rid of the latter, an objection raised at an after-period of the cause against either, as having been improperly allowed, will not be regarded.

The order allowing a receiver which is not modified or discharged becomes the law of the case as to the right to have one; and the application of the funds in his hands necessarily follows through him.

A mortgagee obtains a specific lien upon rents, by diligently obtaining the appointment of a receiver; and a second or third mortgagee may, thus, get an advantage of the first mortgagee as to rents collected.

---

*May 28,*
1844.

*Practice.*
*Receiver.*
*Mortga-*
*gor and*
*Mortga-*
*gee.*
*Injunc-*
*tion.*

MORTGAGE case; and where a receiver was appointed to take the rents and profits of the mortgaged premises, on account of the insolvency and subsequent bankruptcy of the mortgagor. As, after a sale, the amount was insufficient to satisfy the sum due to the complainants, they now presented a petition that the receiver should pass his accounts and pay over the money in his hands to them, in order to make up the deficiency.

When the bill was filed, an injunction was allowed against the mortgagor (then applying in bankruptcy) and against the general assignee in bankruptcy; and, on a supplemental bill, a receiver had been appointed, although opposed by counsel for the general assignee.

The mortgagor's rights (whatever they might be) in the mortgaged premises, had been sold by such general assignee.

The question was, as to whom the rents in the hands of the receiver should go: the mortgagee claiming to receive them and both the general assignee and the buyer from

him of the mortgagor's rights in the premises respectively also claiming them?

1844.

POST
v.
DORR.

Mr. *Evarts* and Mr. *J. P. Hall*, for the complainants.

Mr. *Western*, for the buyer of the mortgagor's rights.

Mr. *Bonney* and Mr. *Wood*, for the general assignee in bankruptcy.

THE VICE-CHANCELLOR :—It is too late to raise an objection against the granting of the injunction and an appointment of a receiver of the rents. If any well founded objection existed to either, it should have been made on motion to dissolve the injunction or in opposition to the receivership at the time it was applied for. Submitting to the appointment of a receiver by those who were before the court and had a right to object and who could have appealed from the order, if dissatisfied with it, but did not, is such an acquiescence in the order as renders it the law of the case with respect to the right to have a receiver; and that right being established, the application of the funds must follow so as to accomplish the object intended. Thus, in the case in hand : the original bill of these complainants was deemed sufficient to entitle them to a preliminary injunction, restraining the mortgagor, Dorr, and his assignee in bankruptcy, from collecting the rents of the mortgaged premises then about to become due and those subsequently to accrue; and on the filing of the supplemental bill in the cause, it was also deemed a proper case for the appointment of a receiver to take and collect the rents; and an order (the order of the twenty-third day of May one thousand eight hundred and forty-three) was made accordingly. All this proceeded on the ground of the mortgagor's bankruptcy and an apprehended deficiency from a sale of the property to satisfy the mortgage debt. It was with a view to provide against such deficiency that the rents were intercepted and placed in the hands of a receiver. The mortgagor and the general assignee in bankruptcy, in whom the equity of redemption or, in other words, the legal estate had become vested, were parties to the suit; and they are

*May* 14, 1845.

bound by the provisions of the order of the twenty-third day of May one thousand eight hundred and forty-three. It is, indeed, there provided that nothing therein contained shall prejudice any right which Mr. T. Waddell the general assignee, may have to apply to this court on proper notice for liberty to come into possession of the rents on discharging the several sums due and payable to the complainants and defendants, mortgagees, and on such other terms as to the court shall seem equitable in the premises. This part of the order is a virtual recognition of the right of the mortgagees to have the rents applied as far as may be necessary towards the payment of the mortgage debt; and such was the object of the court in appointing a receiver. The apprehension of a deficiency from a sale under the decree and the inability of the mortgagor to make it good, which was the foundation of the receivership, have been realized; and it follows, as a consequence, that the rents must be applied towards such deficiency.

It appears to be an established rule, that a second or third mortgagee, who succeeds in getting a receiver appointed, becomes thereby entitled to the rents collected during the appointment, although a prior mortgagee steps in and obtains a receivership in his behalf and fails to obtain enough out of the property to pay his debt. This is on the principle that a mortgagee acquires a specific lien upon the rents by obtaining the appointment of a receiver of them; and if he be a second or a third incumbrancer, the court will give him the benefit of his superior diligence over his senior in respect to the rents which accrued during the time that the elder mortgagee took no measures to have the receivership extend to his suit and for his benefit: *Howell* v. *Ripley*, 10 Paige's C. R. 43. The same principle is found in *Thomas* v. *Brigstocke*, 4 Russ. 64. There, a mortgagee was held not to be entitled to rents collected and brought into court by a receiver appointed in another suit, which rents had accrued intermediate the time of the receiver's appointment and his discharge on the application of the mortgagee, although but for the receivership the mortgagee would have been entitled to the rents from the tenants. Notwithstanding the right of entry of a mortgagee has been abolished by our revised stat-

utes and there is no longer any existing analogy between putting a receiver into possession of mortgaged premises and any legal right or remedy which a mortgagee now enjoys or may resort to, yet the court of chancery has persevered in its ancient practice (doubtless borrowed from the practice of the chancery in England and where a different state of things exists in regard to the legal rights and remedies of a mortgagee) of appointing a receiver over a mortgagor and his tenants after default made in payment of the principal debt and a well grounded apprehension of a deficiency of the security. This has been the practice so long and it is so firmly established by order of the chancellor—and even, I believe, in cases without reference to the point whether, by the terms of the mortgage, the rents and profits were expressly pledged or not as a part of the security—that I am not at liberty to depart from it or to doubt the authority of the court in this particular. At the same time, I confess myself unable to discover the analogy or the principle under our laws in relation to the nature and true character of a mortgage, which authorizes such an interference with the legal rights of a mortgagor, unless, indeed, he has, by the express terms of his contract, pledged the rents and profits—as well as the *corpus* of the estate—as security for the debt.

There are no conflicting claims to the rents in question, other than those between the complainants as mortgagees and the assignee (in bankruptcy) of the mortgagor and his grantee ; and as between these parties, the mortgagees are entitled, under their receiver, to the rents ; and on account of the deficiency shown by them, the prayer of their petition —that the receiver account and pay the money to them— must be granted.