# Scott *v.* Ware.

# Robinson *v.* Ware.

# Lehman, Durr & Co. *v.* Ware.

*Bill in Equity for Foreclosure of Mortgage; and Petitions for Rents and Profits in hands of Receiver in another suit.*

1. *Rents and profits, as between mortgagor and mortgagee.*—When the mortgagor is allowed to remain in possession after the law-day of the mortgage, although default has been made in the payment of the secured debt, he is entitled to take the rents and profits to his own use, unless they are specifically pledged; and the mortgagee can not assert a right to them, as a legal incident of the mortgage, although he may claim and intercept them by exercising either his legal or equitable remedies; that is, by notice to the tenant to pay the rents to him as they accrue, or by entry on the lands, or by recovering the possession by action at law, or by filing a bill for foreclosure, and having a receiver of the rents and profits appointed; but merely filing a bill

[Scott v. Ware.]

for foreclosure, without the appointment of a receiver, does not interfere with the mortgagor's right to the rents and profits.

2. *Receiver; when appointed under bill of foreclosure.*—The appointment of a receiver is not a matter of course under a bill for the foreclosure of a mortgage : to authorize such appointment, it must be clearly shown, by allegation and proof, that the mortgage security is inadequate, and that the mortgagor is insolvent ; or fraud, or imminent peril to the rights of the mortgagee, must be established.

3. *Same; under creditors' bill, filed by mortgagee.*—The mortgagee having filed a general creditors' bill, against the executor and devisees of the deceased mortgagor, with others holding under them ; alleging the insolvency of the executor, and that he was relieved by the will from giving any bond, and asking the appointment of a receiver to take possession of all the property of the estate, including the mortgaged lands ; this does not fasten any lien on the rents and profits of the mortgaged lands, as in favor of the complainant as mortgagee, nor in any way enure to his benefit as mortgagee ; since the possession of the receiver is taken and held for the benefit of the parties to the suit, and strangers can not claim any benefit from it.

4. *Same; rents and profits in hands of receiver, after dismissal of bill*—Such bill having been dismissed on demurrer, because it showed that the complainant's debt was barred by the statute of limitations, but without prejudice to the rights of the complainant as mortgagee, the rents and profits in the hands of the receiver belong to the devisees, or to those who have succeeded to their rights ; and the mortgagee can not claim them in the hands of the receiver, nor intercept them by filing a bill to foreclose his mortgage.

5. *Devised lands ; title and rights of devisee.*—When lands are devised, the title vests in the devisee from the moment of the testator's death, subject to the exercise of the statutory powers with which the personal representative is clothed for the protection of creditors ; and the devisee may alien and convey his right and title to another, though the lands would remain liable for debts as before.

6. *Transfer of receivership from one cause to another.*—Cases may arise, in which it would be the duty of the court, on dismissing a bill, to retain the custody of the property and funds in controversy, and to continue the receivership ; or even to transfer the receivership to another suit, then pending in the court, between the same parties, and involving their rights and equities in and to the same property ; but such transfer could never be ordered, unless the second suit presented a state of facts which would have authorized the appointment of a receiver in the first instance.

APPEALS from the Chancery Court at Montgomery.

Heard before the Hon. H. AUSTILL.

These four cases were closely connected, and originated in the same state of facts. Geo. S. Scott, the appellant in two of the cases, filed his bill in said Chancery Court at Montgomery, on the 1st September, 1873, as a judgment creditor of Robert J. Ware, deceased, suing on behalf of himself and all other creditors who might intervene, against the executor and devisees under the will of said decedent; seeking to subject the devised lands to the payment of the debts due to the complainant and other creditors. Lehman, Durr & Co., a mercantile partnership in Montgomey, were in possession of one tract of land, by purchase from Robert Y. Ware, who was the executor and one of the devisees ; and William Robinson was in possession of another tract, by purchase at

execution sale against Mrs. A. A. Ware, the testator's widow, who was also one of the devisees ; and both said Robinson and Lehman, Durr & Co. were made defendants to the bill. On the 4th January, 1874, pending that suit, an application was made for the appointment of a receiver, on the ground that the executor was insolvent, and was relieved by the will from giving any bond ; and W. T. Hatchett was thereupon appointed receiver, and was directed to take possession of all the property of the estate ; and the parties in possession of the lands afterwards delivered them up to him, under the orders of the court. In April, 1879, the chancellor sustained a demurrer to the bill, and dismissed it, on the ground that the complainant's debt was barred by the statute of limitations ; but the dismissal was without prejudice to his right to file a bill for the foreclosure of a mortgage, which he held on the lands claimed by Lehman, Durr & Co. and Robinson, and which he had attempted to set up by an amendment to his bill. On appeal to this court by the complainant, the chancellor's decree was in all things affirmed, as shown by the report of the case.—*Scott v. Ware*, 64 Ala. 174.

On the 24th October, 1879, the complainant filed his petition in said cause, addressed to the chancellor, asking that the receiver be instructed to pay over to him the rents and profits in his hands arising from the mortgaged lands, or that he be allowed to sue the receiver at law ; and on the 26th February, 1880, he filed a bill for the foreclosure of his mortgage, asking the appointment of a receiver, and claiming that he was entitled to the rents and profits in the hands of the receiver in the other suit. Petitions were also filed by Lehman, Durr & Co. and Robinson, after the dismissal of Scott's bill in the first suit, each asking the restoration of possession of the lands which had been taken from them respectively, and claiming the rents and profits thereof in the hands of the receiver. The chancellor held that Scott was not entitled to the rents in the hands of the receiver, either under his petition in the first suit, or under his bill to foreclose. He also refused to order the rents and profits to be paid over to Lehman, Durr & Co. and Robinson, and dismissed their respective petitions ; but without prejudice to their rights to present their claims, by petition or cross-bill, in another suit then pending in the court, under a bill filed by Robert Y. Ware, the executor, for a final settlement of his trust ; and he ordered the receivership to be transferred to that cause, and continued for further orders therein. Scott now appeals from the dismissal of his petition, and from the refusal to allow him the rents in his foreclosure suit ; and Lehman, Durr & Co. and Robinson each appeal from the

[Scott v. Ware.]

decree dismissing their respective petitions, and here assign the same as error.

W. A. GUNTER, for Scott, appellant in two cases.—1. The theory of a mortgage, at law, is, that the mortgagee is the owner of the fee; that the mortgagor, while remaining in possession, is merely the tenant at will, or at sufferance, of the mortgagee; and that the rents and profits accrue to the mortgagee, as the owner of the legal estate. In equity, there is no substantial difference as to his legal rights, though he is regarded as a trustee of the property, and of the rents and profits, until his debt is paid.—*Toomer, Sykes & Billups v. Randolph*, 60 Ala. 356; *Conrad v. Atlantic Insurance Co.*, 1 Peters, 441; Jones on Mortgages, § 18; *Duval's Heirs v. McLoskey*, 1 Ala. 703; *Knox v. Easton*, 38 Ala. 345; *Paulling v. Barron, Meade & Co.*, 32 Ala. 9; *Barker v. Bell*, 37 Ala. 354. The execution and delivery of the mortgage operates like a conveyance in fee, to vest the property in the mortgagee; and under the statute of uses, and 4th Anne, c. 16, sec. 9 (Code, § 2177), puts the mortgagee in possession, by transferring to him the possession of the mortgagor, or grantor; though it is provided, for the benefit of the tenant, that he shall not be liable for rent which he has paid before notice of the conveyance.—*Mansony v. U. S. Bank*, 4 Ala. 747; *Woodward v. Parsons*, 59 Ala. 628; *Marx v. Marx*, 51 Ala. 223.

The rents and profits, then, of the mortgaged property, especially after the law-day of the mortgage, belong to the mortgagee, as an incident of his right of property in that which produces them, and notice is only necessary to protect the tenant, or party in actual possession, from loss by payment to the mortgagor.—*Mansony v. Bank*, 4 Ala. 747; *Hutchinson v Dearing*, 20 Ala. 804; *Watford v. Oates*, 57 Ala. 290; *Wilson v. Wilson*, Law Rep. 14 Eq. Cases, 32; *Reesden v. Pope*, Law Rep. 3 Exch. 276; *Kerswell v. Bishop*, 2 C. & J. 529; *Pope v. Biggs*, 9 B. & C. 245; *Moss v. Gallimore*, 1 Doug. 279; 4 M. & R. 193; *Coker v. Pearsall*, 6 Ala. 542. The mortgagor may lawfully receive and hold the rents as his own, until the mortgagee does some act which puts an end to the tenancy at sufferance, and shows that the mortgagor no longer has any authority to collect them; and when he does thus interpose, as he may at any time, he becomes entitled to all the rents not then actually paid, and may sue on contracts made by the mortgagor.—*Burrows v. Gradin*, 3 Dowl. N. S. 213; 7 Jur. 942; *Hutchinson v. Dearing*, 20 Ala. 804; and authorities above cited.

2. When a receiver is appointed in a cause, he holds for the benefit of the party who has the better right, whether

the appointment was made at his instance, or at the instance of another; and it is immaterial whether he was made a party in the first instance, or became a party during the progress of the cause.—High on Receivers, §§ 1–15, 134–9. Any one who interferes with the possession of a receiver, or sues him without leave of the court, is guilty of a contempt.—*Ib.* § 163. The appointment operates as an injunction against parties as well as strangers from interfering in any way with his possession or rights. But, while his rights and possession are carefully protected by the court, his appointment is not allowed to prejudice the rights of others, whether parties or strangers. The rights of parties are involved in the suit, and are necessarily protected and guarded; and when strangers intervene by notice and petition, as they may do at any time, their rights are equally protected —*Ib.* §§ 688, 656; *Beverly v. Brooke*, 4 Grattan, 187; *Ellicott v. Warford*, 4 Md. 80. A prior mortgage, not a party, desiring the benefit of the rents, can give notice, and ask the surrender of possession; or he may file a bill, and ask the extension of the receivership to his suit.—*Howell v. Ripley*, 10 Paige, 43; *Thomas v. Brigstocke*, 4 Russ. 64.

3. The appellant in this case, at the October term, 1879, immediately upon the dismissal of his creditor's bill, gave notice of his mortgage to the receiver, and followed it up by his application to the court for the surrender of the possession, or for leave to sue the receiver. This was all he could do in the assertion of his rights as mortgagee, and it was all the law required him to do. From that time, he is to be regarded as in actual possession; and the refusal of the court to order the surrender of possession by the receiver, can not prejudice his legal rights. At that time, the rent for the year 1879, amounting to $1,975, was not only not collected, but was not due; and of the rent for the year 1878, there was $500 still uncollected. As to these sums, the appellant's right as mortgagee seems clear and indisputable, though denied by the chancellor.—*Mansony v. Bank*, 4 Ala. 747; *Hutchinson v. Dearing*, 20 Ala. 804; 10 Paige, 47; 4 Russ. 64.

4. But it is insisted that his right to the rents accruing or collected from and after the filing of his amended bill, asking to be made a party to the creditor's bill as mortgagee, is equally clear. His right results from the nature of his estate, as established by the authorities first above cited, and also from the condition of the property at the time, being in the custody of the receiver. The amendment was allowed, and the appellant was a party to the suit as mortgagee, until the final decree was rendered. If he is to be regarded as already a party to the suit, his rights as mort-

[Scott v. Ware.]

gagee were entitled to the protection of the court, when brought to its notice in any manner, and the receiver would hold for his benefit. If he is to be regarded as a stranger, intervening for the first time *pro interesse suo*, he was equally entitled to protection. In either character, he could not ask the appointment of another receiver, as the court already held possession of the property. If the amended bill has no other force or effect, it must certainly be allowed to operate as an act *en pais*—as notice and assertion of the mortgagee's claim to the rents, which is all that is necessary to terminate the mortgagor's right to them. ".When the court intervenes, the equities of the parties ought to be determined by a reference to what might have been done by any one of them, under the powers given by their security ; and, therefore, their priorities must be regulated by a reference to their powers. "—*Reeve v. Whitmore*, 4 DeGex, J. & S. 20.

5. The dismissal of the creditor's bill is not to be regarded as an adverse adjudication to the rights of the mortgagee. On the contrary, the dismissal was expressly declared to be without prejudice to the rights of the complainant as mortgagee ; that is, not only without prejudice to his right to foreclose his mortgage, but without prejudice to his right to the rents and profits, which he had brought to the notice of the court, and asserted in every legal way. The decree of dismissal was, in effect, only refusing to grant him relief as mortgagee in that suit, but leaving him full liberty to assert all his rights as mortgagee in another suit ; it was simply declining to pass upon his rights at all, leaving them to be enforced in another proceeding. And it must be remembered that the dismissal was not at the instance of the mortgagor, or of any one claiming to have succeeded to his rights : it was at the instance of the devisees of other lands, who invoked the statute of limitations to prevent the subjection of their lands to the payment of the testator's debts. As to the mortgaged lands, no question arose between the mortgagee and those who had succeeded to the rights of the mortgagor ; and none could arise, as regards the rights to the rents, after notice by the mortgagee of his claim, or any act manifesting his intention to assert his rights.—Authorities first above cited. If the mortgagee has lost his right to these rents,.it must be through the pendency of the suit in which he sought to enforce them, and through the possession of the receiver, the mere ministerial officer of the court, whom he could not have sued at law ; and thus the act of the court, in taking and holding possession of the

mortgaged property, is allowed to work manifest injustice to the rights of the suitor.—*Ellicott v. Warford*, 4 Md. 80; *Beverly v. Brooke*, 4 Grattan, 187.

Thos. H. Watts, for Robinson, one of the appellants, cited High on Receivers, § 833; *Field v. Jones*, 11 Geo. 413; *Cullum v. Erwin*, 4 Ala. 452; *Andrews v. Cowles & Ledyard*, 39 Ala. 125.

D. Clopton, for Lehman, Durr & Co., appellants, cited High on Receivers, § 145; *Searles v. Railroad Co.*, 2 Woods, 621; *Robinson v. Ford*, 3 Edw. Ch. 441; *Hughes v. Hatchett*, 55 Ala. 631.

P. T. Sayre, and R. M. Williamson, for Ware, Molton, and others, appellees in each case, cited High on Receivers, §§ 639, 642; *Adair v. Wright*, 16 Iowa, 385; *Hughes v. Hatchett*, 55 Ala. 639.

BRICKELL, C. J.—These causes were argued and submitted, and will be decided in connection. The cases in which Scott is appellant, each involving the same question, will be first considered. To the clear apprehension of the question, it is better to state the facts—the origin, nature, and history of the controversy.

Robert J. Ware died in 1867, the owner of considerable personal property, and seized and possessed of a large and valuable real estate. Before his death, he made and published his last will and testament, which, after his death, was duly admitted to probate. Thereby, his two sons, James H. and Robert Y. Ware, were nominated and appointed executors, and relieved from giving bond for the faithful performance of their duties. Robert Y. alone qualified as executor, and assumed to perform the duties and trusts of administration. The testator, at his death, was indebted to Charles T. Pollard, as executor of Thomas M. Cowles, in a large sum, which was secured by mortgage on real estate, devised to the testator's daughter, Mary W. Molton, for life, remainder over, on her death, to her husband and children. The only remaining note due to Pollard, secured by the mortgage, was transferred to the appellant, Scott. Thereon, on the 25th September, 1872, in the Circuit Court of Elmore, appellant obtained judgment by confession, against the executor, Robert Y. Ware, for the sum of twenty thousand and eighteen dollars, besides costs; upon which execution was issued, and returned *No property found*.

On the first September, 1873, the appellant, suing as well

for himself, as all other creditors of the testator, filed in the Court of Chancery of Montgomery county, an original bill against the executor, the devisees, and purchasers from them of lands devised, for the marshalling of the assets of the testator, and for a sale of the lands devised, for the payment of debts; averring the insolvency of the executor, and his waste of the assets. The bill avers the rendition of the judgment against the executor, and the issue and return of execution thereon; but makes no reference to the mortgage aforesaid, nor any claim to priority over other creditors. On the 5th January, 1874, in that suit, the appellant applied to the court for the appointment of a receiver, " to take possession and charge of the property of the estate of Robert J. Ware, deceased," because of the insolvency of the executor, his neglect of his duties, and waste of the assets. On the 19th January, 1874, after the court had afforded the executor an opportunity to give bond, and he had failed, a receiver was appointed to " take charge and control of all the property of the estate of Robert J. Ware, deceased, and hold and preserve the same until the further order of the court." On the 6th of September, 1875, by leave of the court, the appellant amended his bill, by averring the mortgage, and that the premises were insufficient for the payment of the mortgage debt; praying that the mortgage " be foreclosed, at the time of the sale of the other property mentioned in his original bill, for the payment of his debt," &c. The cause progressed in the Court of Chancery, until the 26th April, 1879, when a decree was rendered, dismissing the bills, original and amended, without prejudice to any right the appellant had as mortgagee; which decree was, on appeal to this court, affirmed.

From his appointment, the receiver had rented all the lands of the testator, including the mortgaged premises; and they were rented for the year when the decree of dismissal was rendered, the rent not falling due until the end of the year. On the 24th October, 1879, the accounts of the receiver not having been settled, and no order of discharge granted to him, the appellant presented to the chancellor a petition, averring the insufficiency of the mortgaged premises to pay the mortgage debt, and that the rents in the hands of the receiver, with the value of the premises, was not adequate to payment in full; and praying that the receiver be ordered to pay him the rents, or that he be permitted to sue for them at law. This petition was overruled and denied, at the April term, 1880, of the court.

On the dismissal of appellant's original and amended bills aforesaid, he gave the receiver notice of the mortgage, and

that he claimed the rents in his hands, collected and uncollected. On the 26th February, 1880, the appellant filed an original bill for the foreclosure of the mortgage, against the executor, and the devisees of the lands. The bill avers the insufficiency of the mortgaged premises to pay the mortgage debt, the insolvency of the executor, and his waste of the personal assets ; avers a right to the rents in the hands of the receiver, and claims their application to the mortgage debt. An original bill was pending in the court, filed by the executor, for a settlement of his administration, and the marshalling and distribution of the assets. The chancellor ordered a settlement of the accounts of the receiver, and transferred the receivership to the cause in which the executor was the party complainant, and continued it, for the purposes of collecting the future rents and profits of the real estate. In that cause, the appellant filed a petition, claiming the rents and profits of the mortgaged premises. A decree was finally rendered disallowing his claim to rents, except such as should accrue after the filing of his bill of foreclosure. The correctness of that decree is the question involved in each of the cases in which Scott is appellant.

While, in a court of equity, a mortgage is regarded as a mere security for a debt—the debt being the principal, and the mortgage an incident ; it is in a court of law regarded as a conveyance of an immediate estate in lands, passing to the mortgagee a present right of entry and possession, if there is not expressly, or by fair implication, a reservation to the mortgagor of possession until default in the performance of the condition. Before default in the performance of the condition, all that remains in the mortgagor is the right, on performance, to be restored to his original estate. On the expiration of the law-day, if he makes default, the estate vests absolutely in the mortgagee : it is freed from the condition annexed to it in its creation. If the mortgagor is suffered to remain in possession, he is the mere tenant at will, or, perhaps, more properly speaking, the tenant by sufferance, of the mortgagee. While in possession, he is entitled to the rents and profits—not as the agent or bailiff of the mortgagee, for there is no liability resting upon him to account for them ; but as the tenant in possession, and as to all the world, but the mortgagee and those claiming under him, the owner of the estate. For, though his estate is divested by breach of the condition, of that breach only the mortgagee and his privy in estate can take advantage.— *Welsh v. Phillips*, 54 Ala. 309 ; *Paulling v. Barron*, 32 Ala. 11 ; *Barker v. Bell*, 37 Ala. 358. On his death, in possession, his widow is entitled to dower as a legal right, as against all the world

but the mortgagee, and, as against him, in subordination to the mortgage (*Boynton v. Sawyer*, 35 Ala. 497; *Fry v. Merchant's Ins. Co.*, 15 Ala. 810); and his heir is in by descent, entitled to the rents and profits.—*Br. Bank Mobile v. Fry*, 23 Ala. 770. Therefore, it was said by Lord Mansfield, in *King v. St. Michaels*, Doug. 630, in speaking of the relation of the mortgagor as to all the world except the mortgagee: "It is an affront to common sense to say the mortgagor is not the real owner."

When the condition of the mortgage is broken—when there is default in the payment of a debt it is intended to secure—the mortgagee may, if the power is conferred, proceed to a sale of the premises. When the power is conferred, a sale in conformity to it has all the effect of a decree of strict foreclosure: the legal and equitable estate unite in the purchaser, freed from all right of redemption, other than that secured by the statute to the mortgagor, and to judgment and mortgage creditors.—*Childress v. Monette*, 54 Ala. 317. Or the mortgagee may not exercise the power; or it may not be conferred: he has other remedies, to any or all of which he may resort, and may pursue them concurrently, without being compelled to an election. 1. He may resort to any legal or equitable remedy, to which any other creditor, having a debt past-due, is entitled. 2. He may terminate the permissive tenancy of the mortgagor by entry, or by ejectment for the recovery of possession. 3. He may resort to equity for a foreclosure and sale to satisfy the debt—*Duval v. McLoskey*, 1 Ala. 708; *Micou v. Ashurst*, 55 Ala. 607; Kerr on Inj. 191. But, if he does not enter, or bring ejectment—if he does not displace or disturb the possession of the mortgagor—the latter is regarded as the owner, entitled to take the rents and profits. This right may be displaced, by notice to the tenants that the rents and profits are claimed by, and must be paid to the mortgagee. After such notice, no payment to the mortgagor, of rent past-due, or of rent accruing, unless it be of rent which had accrued before the mortgagee was entitled to enter, can be sustained against him. But all payments of rents to the mortgagor, which had accrued before notice, or before entry, will be sustained. When there is no specific pledge of rents and profits, it is not, as is so strongly insisted by the counsel of appellant, as a mere legal incident to the mortgage, that the mortgagee can claim to take them. When he takes them, it is in consequence of his possession of the premises, or when, resorting to equity for a foreclosure, he obtains the appointment of a receiver.—*Argall v. Pitts*, 78 N. Y. 239; *Douglas v. Cline*, 12 Bush (Ky.), 608; *Bell v. Mayor*, 10 Paige, 49.

Rents accruing at the time of sale under a decree of foreclosure, do not pass to the purchaser, until he is entitled to enter and take possession of the premises. The mortgagee not having obtained a lien upon them, by procuring the appointment of a receiver, the mortgagor, or the owner of the equity of redemption, is in law entitled to them.—*Astor v. Turner*, 11 Paige, 436 ; *Gilman v. Ill. and Miss. Telegraph Co.*, 91 U. S. 603. After notice to the tenants, by virtue of the statute dispensing with attornment to render effectual a conveyance (Code of 1876, § 2177), the possession of the tenant becomes that of the mortgagee. He stands, in many respects, in the relation of a landlord ; the possession of the tenant is his possession.—*Mansony v. U. S. Bank*, 4 Ala. 735 ; *Chambers v. Mauldin, Ib.* 477 ; *Coker v. Pearsall*, 6 Ala. 542 ; *Knox v. Eastcn*, 38 Ala. 345 ; *Marx v. Marx*, 51 Ala. 222.

A mortgagee, therefore, claiming rents and profits, after his right of entry has accrued, must be *active* in making claim. The right of the mortgagor to them cannot be interrupted, unless the mortgagee enters, or give notice to the tenants in possession ; or unless, pending a bill for foreclosure, he obtains, in aid of it, the appointment of a receiver. As a mere incident to his legal estate, they do not accrue to him. The mere filing of a bill of foreclosure will not interrupt the right of the mortgagor in possession, or of those claiming under him, to take the rents and profits. The right can be interrupted, when the mortgagee resorts to equity for a foreclosure, not having entered or given notice to the tenants, only by obtaining the appointment of a receiver. Such an appointment is not a mere matter of course in aid of the foreclosure suit. There must be shown clearly, by allegation and by evidence, that the mortgage security is inadequate, and the mortgagor insolvent ; or some case of fraud, or of imminent peril to the rights of the mortgagee, before the court will exercise the power of appointing a receiver, displacing the possession of the mortgagor.—High on Receivers, §§ 639-644 ; *Hughes v. Hatchett*, 55 Ala. 639.

It is apparent that, until after the dismissal of the creditors' bill, the appellant, as mortgagee, had not been *active* in making claim to the rents and profits—had taken no step, indicating a purpose to displace the right of the mortgagor, or of those claiming under him, to take and hold them. The bill, on which he obtained the appointment of a receiver to take them, did not distinguish them from the rents and profits of other real estate of the testator, and treated the rents and profits of all as a common fund, in which all the creditors of the testator had the right to participate, upon terms of equality. In that suit, the appellant was pursuing,

[Scott v. Ware.]

as was his right, the remedy of a mere creditor of the testator, as essentially as if it had been a suit at law against the executor, founded on the past-due promissory note ; a remedy open to all other creditors of the testator, pursued as well for their benefit, as for that of the appellant, and in which all were invited to join. The receiver was appointed to take and hold the assets, real and personal, of the testator, including the mortgaged premises, because of the insolvency of the executor, and because he was without bond for the faithful performance of his duties. The exigencies of the case made by the bill were satisfied, when he was charged with the custody and preservation of the assets, for the benefit of creditors, whose claims were a primary liability upon them, and then for the benefit of legatees and devisees ; and this, it must be observed, was the whole scope of his appointment. There was, when the appointment was made, no averment in the pleadings, no information communicated to the court, of the fact of the mortgage, nor any right claimed under it. True, it was subsequently introduced (whether properly or not, is not a matter of importance now), by an amended bill, averring its insufficiency as a security for the debt, praying its foreclosure, and that for the balance of the debt it should fail to pay, the appellant should be paid on an equality with other creditors. The insolvency of the estate of the testator—its insufficiency to meet all the claims of creditors chargeable upon it—was not averred ; and the whole theory of the pleadings was, that there was a sufficiency of assets for that purpose. It is obvious that, at no stage of the proceedings in that suit, was there a case made by the pleadings which would have justified the appointment of a receiver to take the rents and profits for the benefit of the appellant as mortgagee. The only case made, was for the appointment of a receiver to take charge of the assets for the benefit of creditors and legatees and devisees.

We are not questioning collaterally the regularity and propriety of the order in that cause appointing a receiver. It is a simple inquiry as to the operation and effect of the appointment, which can be satisfactorily resolved in no other way, than by ascertaining what it was proper and right for the court to do, in the case before it, and which it must be presumed the court did and intended. There is no room for the contention, that the receiver was appointed for the benefit of the appellant as mortgagee. The appointment was intended solely for the purposes of suit, and for the protection of the rights and interests involved in it—the rights and interests of creditors of the testator, and of legatees

and devisees, which had been under the care and protection of the executor, whose authority was displaced, because of his insolvency and inability to give bond for the faithful performance of his duties.

The appointment of a receiver is for the benefit, and on behalf of all the parties in interest, and not for the benefit of strangers to the suit. He holds for the benefit of all parties, until the termination of the suit ; and then for the benefit of the parties ascertained to have the right to the property or fund in controversy.—2 Story's Eq. § 829 ; *Howell v. Ripley*, 10 Paige, 46. When the rights of strangers are affected, they can apply to the court to be heard *pro interesse suo* ; and the court will protect them from any inequitable interference by the receiver, its own officer. But a stranger can claim or derive no benefit from the appointment of a receiver. While, if he intervenes, he will be protected from any diminution of his rights or equities because of the receivership, it can not operate to enlarge such rights. He can not claim and derive from it a benefit to which he would not have been entitled if there had not been a receiver appointed, and the parties to the suit had remained in the condition in which they were when the receiver was appointed. *Howell v. Ripley, supra.* Therefore is the general rule, that a junior mortgagee, proceeding, as he may, to foreclose without making parties senior incumbrancers, and obtaining in aid of the foreclosure a receiver of the rents and profits pending the suit, obtains a specific lien upon them, and is entitled to them, until the, senior mortgagee applies for and obtains a receiver in a suit for foreclosure. Then, the senior mortgagee will acquire a right to, and a lien upon subsequently accruing rents ; and not upon rents past-due, which are in, or may come to the hands of the first receiver.—High on Receivers, § 688 ; *Howell v. Ripley, supra; Post v. Durr,* 4 Edw. Ch. 412.

In *Thomas v. Brigstocke,* 4 Russell, 64 (4 Eng. Ch. 64), a receiver had been appointed in a suit for establishing the will of the mortgagor, and had received the rents during the pendency of the suit. The mortgagee, who was not a party to the suit, gave notice to the tenants of the mortgaged premises to pay the rents to him, which was disregarded, in consequence of the appointment of a receiver. Subsequently, he filed a petition, claiming the rents, and for the discharge of the receiver. The receiver was discharged, but the claim to rents was disallowed. The master of the rolls, whose decree was affirmed by the Lord Chancellor, said : " A mortgagee is entitled only to such rents as become due when he is in possession of the mort-

gaged premises. His notice to the tenants could not divest the possession of the receiver, which was, in truth, the possession of those who claimed under the will of the mortgagor. For the purpose of divesting the possession of the receiver, an application to the court was necessary; and it seems that the mortgagee actually made application a few months since, and obtained an order for the discharge of the receiver. From the time of the discharge of the receiver, or, ·perhaps, from the time when his application was made for the discharge, he may be considered in possession; but he can have no intermediate rents, when he was out of possession."

In *Gresley v. Adderley* (1 Swanst. 579), the mortgagee of a term claimed an account of rents and profits in the hands of a receiver, accruing before the expiration of the term. The mortgagee was not a party to the suit in which the receiver was appointed. The account was denied him, Lord Eldon saying: "I apprehend that, when the court interposed to receive the rents, beyond what was required for keeping down the interest on incumbrances, all the surplus rent, after payment of interest, was received for the benefit of the heir. I think that the mortgagee of a term, if he chooses not to lay his hands on the rents during the term, must be in the situation of a mortgagee in fee, who has suffered the rents to be applied for purposes other than the satisfaction of his security."

The appointment of a receiver being solely for the benefit of the parties to the suit, intended for the preservation of the fund pending the litigation, to be paid ultimately to the party prevailing, there is no principle upon which the appellant, as a mortgagee, can claim from the receiver a retrospective account of rents and profits. It will not be insisted that he could have claimed such an account from the executor, or the devisees of the testator, if they had remained in possession, undisturbed by the appointment of a receiver. The truth is, the bill against them, on which the appointment of a receiver was obtained, having failed and been dismissed, the possession of the receiver was their possession, and, by relation, must be deemed exclusive throughout the whole period of the litigation, from the appointment to the discharge of the receiver.—*Beverley v. Brooke*, 4 Grattan, 212; *Field v. Jones*, 11 Ga. 413. The appellant was a party,—the actor, in the suit in which the receiver was appointed. If his right and claim to the rents in the hands of the receiver was involved in that suit, the decree of dismissal of the bill, reserving his rights as mortgagee, was an adjudication necessarily of a want of right and claim to the rents in the hands of the receiver, the disposition of which could be de-

[*Scott* v. *Ware.*]

termined only in that suit. But any such right and claim was as foreign to the purposes of the suit, as if the appellant had been a stranger instead of a party. The claim now preferred is essentially a claim to rents and profits in the hands of the executor or devisee of the mortgagor. Their possession was not divested by the appointment of the receiver. As was said in *Thomas v. Brigstocke, supra,* his possession was *in truth their possession.*

The result is, the decree of the chancellor appealed from, disallowing the claim of the appellant Scott to the rents in the hands of the receiver, must be affirmed.

Lehman, Durr & Co., by purchase from Robert Y. Ware, acquired the lands devised to him by the testator, Robert J. Ware; and they were in possession, taking the rents and profits, when the receiver was appointed on the creditor's bill filed by Scott. ˙ Asenath A. Ware was the widow of the testator, and the lands devised to her were sold, at sheriff's sale, under execution against her, and purchased by William Robinson, who was in possession, taking the rents and profits, when the receiver was appointed. Both of them, Lehman, Durr & Co. and Robinson, were defendants to the creditor's bill, and yielded to the receiver possession of the lands claimed by them ; and he collected the rents and profits, and had them in his hands when their petitions for restoration to possession, and for payment of the rents, were dismissed.

On the death of the testator, the legal estate, then residing in him, in the lands devised, passed to the devisees. There was no gap or chasm in its continuity—it was not at any time in abeyance. *Eo instanti,* the death of the testator, it passed to the devisees, who had the right to possession, and to rents subsequently accruing.—1 Brick. Dig. 935, § 316. The lands were subject to the payment of debts ; and the executor, for that purpose, could have taken possession, and rented them ; or could, under the statute, have obtained an order to sell them from the Court of Probate, if the personal estate was insufficient. Until the executor exercised the power of renting, or the power of sale, the right of the devisee to possession, and to the rents and profits, was not intercepted, and the estate passing to him remained. 1 Brick. Dig. 937, §§ 328–333. The devisee was entitled to alienate, and an alienation passed the legal estate, though it would continue subject to the payment of debts, and would not frustrate or impair the power of the executor, nor lessen the liability of the land to pay debts, or to equalize, as the will directs, the value of the devises.—*Bell v. Craig,* 52 Ala. 215 ; *Goodman v. Benham,* 16 Ala. 625.

[Scott v. Ware.]

The possession of the receiver, through the whole period of the receivership, was the possession of Lehman, Durr & Co. and of Robinson, who yielded him possession in obedience to the orders of the court, and ultimately prevailed in the suit. When the suit terminated, the functions of the receiver terminated. As between the parties to the suit, all his duties ceased with the decree dismissing the bill—a final decree upon the merits of the controversy, and, in effect, an adjudication that the receiver ought not originally to have been appointed; and that the court should not have drawn into its custody, at the instance of the complainant, the property in controversy, or have taken the possession of those having a rightful and legal possession. The receiver remained subject to the orders of the court, until, in obedience to them, he had made restoration of the property, and accounted for the moneys he had received. . The plain duty of the court was, to restore the possession of the lands to the parties from whom it had been taken, and to order the receiver to pay them the rents which he had received while holding possession for them.—High on Receivers, § 833.

There may be cases, in which the court would not, on the termination of a suit, order the receiver to restore possession of property, and to pay over funds to the successful party. Circumstances may exist, in which it would be a duty to keep the custody of the property and funds, and to continue the receivership; and, it may be, to transfer the receivership from the *cause* terminated, to another cause pending before the court, between the same parties, involving their rights and equities in and to the property and funds. But, in any such case, a state of facts must be shown, which would authorize the original appointment of a receiver. In the cause to which the chancellor transferred the receivership, the custody of the property and the funds, neither Robinson, nor Lehman, Durr & Co., are parties; and there is no fact shown in it, which would have authorized the appointment of a receiver to take their possession of the lands, or the rents and profits accruing from them. There is no averment or evidence of the insolvency of either—of any inability to account for the rents, if hereafter they should be wanted to pay debts, or to satisfy any charges to which the legal estate may be found subject, nor of any waste, or peril to the property. When parties have rightful possession of lands, under a legal title, a court of equity is reluctant to interfere with the possession, by the appointment of a receiver; and it may be doubted whether, under any circumstances, it will interfere, unless they are parties to the record.—High on Receivers, § 145. The interference is unauthorized, when it does

[Carver v. Eads.]

not appear that there is any risk of loss to the parties claiming adversely.—High on Receivers, § 557. As the court could not, in the cause to which the receivership was transferred, have made an original appointment of a receiver to take possession of these lands and the custody of the rents, it was erroneous to transfer the receivership to it.

On the appeals by Lehman, Durr & Co. and by Robinson, the decree must be reversed, and the cause will be remanded, that the chancellor may order the restoration to them, respectively, of possession of the lands now held by the receiver, obtained from them, and payment to them of the rents of such lands in his hands.

STONE, J., not sitting.