# Alabama National Bank v. Mary Lee Coal & Railway Co. *et al.*

*Creditor's bill to declare decree fraudulent and void, and for receiver.*

1. *Mortgage; property embraced by description.*—A deed of trust or mortgage conveying all the "personal property of every kind, now owned or hereafter to be acquired and owned and used whether by purchase or otherwise, in connection with and for use in developing and operating its said coal mines or other works of improvement now on or hereafter to be opened upon said land," covers only the chattels used in operating such mines or improvements, and does not embrace coal, coke or iron already mined and on hand when the mortgagee seeks to take possession.

2. *Same; rents, incomes and profits.*—Where under the terms of a mortgage, the property remains in the possession of the mortgagor, he is entitled to all rents, incomes and profits arising therefrom until the mortgagee intervenes actively to intercept them, but upon such intervention, after the law day, either by notice to the tenants of the mortgagor to pay rent to the mortgagee, by the latter's entry for

[Alabama National Bank v. Mary Lee Coal & Railway Co. *et al.*]

condition broken, or by bill for the appointment of a receiver averring the insufficiency of the mortgaged property to pay the debt secured, praying the interception of the rents, etc., the rents, incomes and profits which have not then accrued, but those only, may be intercepted and applied to the mortgage debt.

3 *Fraudulent and collusive decree.*—Where a mortgagee files a bill for foreclosure and the appointment of a receiver, seeking to subject together with the property covered by his mortgage, other property not embraced therein, and the mortgagor answers, consenting to the appointment of a receiver as prayed, "until some arrangement can be made with its creditors, and its financial embarrassments removed so as to enable it to properly conduct its operations," the bill and answer being both drawn by the solicitor of the mortgagee, a decree thereon appointing a receiver as prayed, will be held collusive and fraudulent and void as to other creditors of the mortgagor, the prayer of the bill asking that the receiver be authorized to carry on the business and "to preserve the corporate existence of said company, (mortgagor) and to preserve all corporate property from being sacrificed under any proceeding which can or may be taken and would likely prejudice or sacrifice the same."

4. *Fraudulent decree as act of party.*—A decree rendered by consent upon a collusive and fraudulent presentation of the case is to be taken as the act of the parties thereto and not as the judgment of the court.

5 *Fraudulent decree; effect of possession by court of the property affected thereby.*—The fact that under a collusive and fraudulent decree, the property is brought into the possession of the court for distribution, is no defense to a bill by creditors to annul such decree as fraudulent and collusive.

6. *Same; election by defrauded creditor.*—Where a collusive proceeding, fraudulent against creditors, is pending, a creditor may intervene therein by petition, but he also has the right to attack such proceeding by original bill.

APPEAL from Birmingham City Court.
Heard before Hon. WM. W. WILKERSON.
The bill in this case was filed by the appellant, the Alabama National Bank, against the Mary Lee Coal and Railway Co. and the Mercantile Trust and Deposit Company of Baltimore, seeking to have declared fraudulent and void as to it, as a creditor of the Mary Lee Coal & Ry. Co., a decree and other proceedings in a cause of said Mercantile Trust and Deposit Co. against said Mary Lee Coal & Railway Co., and for other relief. So far as necessary to an understanding thereof, the allegations and prayer of the bill are sufficiently shown by the opinion. To the bill, the defendant, the Mercantile Trust

& Deposit Company, interposed the following grounds of demurrer. (1.) The complainant has not by its bill, shown that this respondent had or claims possession or control of any property which is in any way liable and subject to the claim and demand of the complainant. (2.) Said bill shows on its face that the complainant is seeking to subject to its demand, certain property as to which this defendant has no interest, right, title or claim. (3.) That it appears upon the face of the bill and exhibits thereto, that the bill filed by this respondent was for the purpose of foreclosing certain mortgages or deeds of trust executed to it by the Mary Lee Coal & Railway Company upon which there had been a default, which according to the terms of said mortgages or deeds of trust, authorized this respondent to file said bill. (4.) That it is not shown by the bill that this respondent had ever any purpose or intention to deprive the complainant of any right or remedy to which it might be entitled in respect to the property of the Mary Lee Coal & Railway Company. (5.) That if the allegations of the bill are true, the complainant has a complete and ample remedy against the receivers heretofore appointed by this honorable court, and said controversy will be in respect to the matters with which this respondent has no concern. (6.) That said bill undertakes to charge this respondent for the acts done by said receivers heretofore appointed and acting under the orders and directions of this honorable court, and for which this respondent is in no wise responsible or liable.

The court sustained the demurrer of the Mercantile Trust and Deposit Company, from which ruling the complainant appealed.

MOUNTJOY & TOMLINSON for appellant. (1.) Suits commenced and decrees and judgments suffered with intent to hinder, delay or defraud creditors, are void. Code, § 1735. And putting property in the hands of a receiver to keep it from being sacrificed by sale under execution or attachment, is hindering and delaying creditors within the meaning of the statute. *Lehman, Durr & Co. v. Kelly*, 68 Ala. 192; *Knight v. Packer*, 72 Am. Dec. 388; Waite, Fraudulent Conveyances, § 17.

(2.) A mortgage of personal property, which is left with the mortgagor to be used and disposed of by him is

void as to other creditors. *McDermott v. Eborn*, 90 Ala. 258; *O'Neil v. Birmingham Br. Co.*, 101 Ala. 383; *Benedict v. Renfro*, 75 Ala. 127; *Orton v. Orton*, 33 Am. Rep. 717.

(3.) By original bill is the proper procedure, even when the creditor filing the bill is the prior lien holder, and a receiver has been appointed at the suit of another creditor. *Talladega Mer. Co. v. Jenifer*, 102 Ala. 259.

(4.) A consent decree is not the judicial act of the court. *Tex. Ry. Co. v. So. Pac. Co.*, 137 W. S. 48; *Lawrence Mfg. Co. v. Janesville Cotton Mills*, 138 U. S. 552.

(5.) So long as the mortgagor held possession, he was entitled to the rents and profits, and an attaching creditor can subject them. *Young v. Hale*, 6 Lea (Tenn.) 179; 15 Am. & Eng. Enc. L. 813; 127 U. S. 494.

LONDON & TILLMAN, *contra*. 1. The property, the possession and right of disposition of which was left with the mortgagor, had no existence at the date of the mortgage, so cannot affect the conveyance.

2. The consent for the appointment of a receiver was the duty of the directors, under the circumstances. To have adopted any other course would simply have been to imperil the property and depreciate its value. 2 Morawetz Cor. §§ 787–788.

3. No fact alleged in the bill shows collusion, or an intent to hinder, delay or defraud other creditors, by the Mercantile Trust & Deposit Co., in filing its bill, or in taking the decree thereon.

McCLELLAN. J.—The deeds of trust executed by the Mary Lee Coal & Railway Co. to the Mercantile Trust & Deposit Co. to secure bonds do not, in our opinion, cover or embrace the rents, incomes, profits or proceeds of the property which is expressly granted, or of the business of mining coal, &c., which the grantor was to carry on. They in terms embrace all the "personal property of every kind now owned or hereafter to be acquired and owned and used, whether by purchase or otherwise, in connection with and for use in developing and operating its said coal mines or other works of improvement now on or hereafter to be opened upon said lands or any part thereof." This clause manifestly refers, not to the product or income from said mines, but

to chattels used in carrying on the mining operations and in operating in connection therewith the railway covered by the instrument, such as engines, cars, live stock, mining implements, and the like. All which is made the more obvious by reference to the provisions of the deeds bearing upon the status of the property before default made in the payment of the bonds, &c., where it is stipulated that until such default and possession taken by or for the trustee on account thereof, the Mary Lee Company shall be permitted and suffered to possess, manage, operate, use and enjoy the property, real and personal, rights and franchises thereby conveyed *and* to contract for the use of the same, *and* to take, receive and use the rents, incomes profits and tolls thereof, thus making a clear distinction between the personal property rights and franchises which are covered by the deeds, and the rents, incomes, &c., &c., which are not; and cumulatively providing that the latter should enure and belong to the grantor. The other references in the deeds to rents, incomes, &c., relate alone to the rights of the trustee, should he take possession of the property, or of a receiver, should one be appointed to receive the rents, incomes, profits, tolls, &c.; which should arise from the continued operation of the works by the trustee after taking possession or by the receiver under orders of the court, the latter's right being expressly limited to the incomes of the property during the pendency of the suit in which he is appointed.

The property described in complainant's bill as certain coal which had been mined and certain coke which had been manufactured and certain pig iron, all which was in the possession of the Mary Lee Co. when the receiver was appointed, and also certain bills receivable filed by said company at that time representing the proceeds of the sale of products of its mine and coke ovens constituted in part the rents, incomes, profits, tolls, &c. of the property which was embraced in the deeds of trust but was itself not so embraced. Of course, therefore, these deeds could not have been rendered fraudulent as to other creditors by the fact that this property was allowed to remain in the possession and at the unfettered disposal of the Mary Lee Co., the grantor therein.

This property not being embraced in these deeds—mortgages, we will call them—and being rents, profits

or incomes which had accrued prior to the appointment of the receiver, the trustee—mortgagee—was without right or power to intercept it, and have it applied to the mortgage indebtedness directly, or indirectly through the use of it in operating the mines and railroad of the mortgagor by the receiver for the benefit of the bondholders. The rule is well established in such cases, that until the mortgagee does actively intervene for the purpose of intercepting the rents, incomes and profits of the mortgaged estate, these belong to the mortgagor, and upon such intervention after the law day, either by notice to tenants of the mortgagor to pay rents to the mortgagee, by the latter's entry for condition broken, or by the appointment of a receiver at the suit of the mortgagee on a bill averring insufficiency of the mortgaged property to pay the debt, and praying the interception of the rents for that purpose, such only of the rents, incomes and profits as have not accrued, such only as do accrue *after* such notice, or entry, or appointment of a receiver may thus be intercepted and be applied to the mortgage debt.—*Scott v. Ware*, 65 Ala. 174; *Johnston & Stewart v. Riddle*, 70 Ala. 219; *Lehman Brothers v. Tallassee Manufacturing Co.*, 64 Ala. 567; *Childs v. Hurd*, 9 S. E. Rep. (W. Va.) 362; *Ohmer v. Boyer*, 89 Ala. 273, 281; *Falkner v. Campbell Manufacturing Co.*, 74 Ala. 359; *Comer v. Sheehan*, *Ib.* 452; *McMillan v. Otis*, *Ib.* 560.

All the property described in complainant's bill, constituting, as it did, rents, incomes and profits of the mortgaged estate, but no part of said estate, had accrued to the mortgagor and been reduced to possession before there was any intervention by the mortgagee. It therefore belonged to and was the property of the mortgagor as fully as if it had not issued out of the mortgaged property at all but had come to him from another and entirely independent source. The mortgages or trust deeds involved here in terms recognize this and expressly limit the receivers right to after accruing rents and incomes, as we have seen. Whether rents and incomes thus accruing before the appointment of the receiver might be intercepted by him when the mortgage expressly embraces them, is not a question in this case.

The bill filed by the Mercantile Trust & Deposit Co., trustee, for the appointment of a receiver, foreclosure of said mortgages, &c., avers "that there are sundry notes

[Alabama National Bank v. Mary Lee Coal & Railway Co. *et al.*]

and obligations of the said Mary Lee Coal & Railway Company due and unpaid, and also that there is due a large amount of back wages to the employés and operatives of said company;" that it has made default both in providing a sinking fund as required by said deeds and in the payment of the interest on the bonds secured thereby, that said deeds cover the rents, tolls and incomes of the said company, and that under these circumstances the intervention of a court of equity for the enforcement and protection of the rights of bondholders is imperatively required, "and especially for the immediate appointment of a receiver, to take charge of, keep and preserve the said mortgaged property, to continue the business of the said company, and to receive and properly appropriate its income until the final decree of this honorable court in the premises." The following is a part of the prayer of the bill filed by the trustee: "That a receiver or receivers may be appointed with full power and authority to demand, sue for, collect, receive and take into his possession the goods, chattels, rights, credits, moneys and effects, lands, tenements, books, papers and property of every description belonging to the said Mary Lee Coal & Railway Company, and that said receiver or receivers may receive from the said court, in addition to the ordinary powers possessed by such receivers, full power and authority to manage, run and operate said company, and to carry out any and all contracts said company may have made (and to renew the same), connected with the conduct of their business, especially the contract with T. G. Bush, Receiver, and if essential thereto to pay to the said Bush, Receiver, any indebtedness which may now be due him, and to preserve and protect the corporate franchises, privileges and property and to preserve the corporate existence of said company and to preserve all corporate property from being sacrificed under any proceeding which can or may be taken and would be likely to prejudice or sacrifice the same, and that an injunction may issue against the said defendant company, and all persons claiming to act by, through or under it, and all other persons, to restrain them from interfering with the said receivers taking possession of and managing the said property."

The present bill of the Alabama National Bank alleges that the bill of the Mercantile Trust & Deposit Co.

against the Mary Lee Coal & Railway Co. was prepared in the city of Baltimore, Maryland, where the complainant corporation therein is located, and that an answer was at the same time and by the same attorneys who wrote the bill prepared for the Mary Lee Coal and Railway Company. The present bill further avers "that immediately upon the filing of said bill [of said trustee in the city court of Birmingham] the said Mary Lee Coal & Railway Company, on the same day of the filing of said bill, filed a short answer, which complainant is informed and believes was prepared by the same attorneys who prepared the original bill, in which answer said company, while not admitting the allegations of said bill (that portion of the prepared answer being erased) consented to the appointment of receivers *until some arrangement can be made with its creditors and its financial embarrassment be removed so as to enable it to properly conduct its operations.*' Complainant avers that upon the filing of said answer, and upon the same day, a decree was rendered by consent of said Mary Lee Coal & Railway Co. appointing * * * * * receivers of said company, and directing them to take charge 'of all and singular the mortgaged premises specified and described in the deeds of trust referred to in complainant's bill all the books, papers and records of said company; all and singular the stock, tools, machinery, engines *and all other property* of every kind and description of said company wherever situated, and that thereupon the said receivers did take charge of all the property of said Mary Lee Coal & Railway Company," including the coal, coke, iron and bills receivable to which we have referred as contstituting rents, incomes, &c., &c."

Upon these facts and averments, the position of the Alabama National Bank, complainant here, is that the decree, in so far as it authorized and required the receivers to take the property last mentioned in their possession, was collusive and fraudulent being prayed by the complainant and consented to by the respondent in that bill for the purpose of hindering, delaying and defrauding the general creditors, of whom the bank is one, of the Mary Lee Company. We think the position well taken. As has been made to appear, the mortgagee in its bill for a receiver and foreclosure prayed that the re-

ceiver should be invested with full power and authority to demand, sue for, &c., and take into his possession *all* the property of the Mary Lee Company, as well that which was not covered by the mortgages as that which was embraced in them, and full power and authority to carry on the business and works of that company and to preserve and protect the corporate franchises, privileges and property, and to *preserve the corporate existence of said company, and to preserve all corporate property from being sacrificed under any proceeding which can or may be taken and would likely prejudice or sacrifice the same;* and that an injunction may issue against the Mary Lee Co. and all persons claiming to act by, through or under it, *and all other persons* to restrain them from interfering with the said receivers taking possession of and managing the said property. The averment that the Mary Lee Co. owned sundry past due notes and a large sum as back wages to its employés seems to have been made as a predicate for this extraordinary prayer that property not covered by the mortgages should be taken into possession by the receiver that it might be "preserved" from all proceedings by such other creditors to collect their debts; and the solicitude of the complainant mortgagee that the corporate existence of the respondent mortgagor should be preserved by the receiver is unaccountable save upon the theory that it was contemplated that by thus holding such creditors off said property until financial arrangements could be made, or creditors could be compromised with, or results attained in operating the respondent's works by means of this other property which would enable the corporation to resume business in its own name. And all this is made clear by the answer of the Mary Lee Co. prepared by the attorneys who drafted the bill in Baltimore, and at the same time, and filed immediately upon the filing of the bill. The brevity of this paper is only surpassed by its candor. Written as a consent to the granting of the prayer of the bill in respect of the appointment of a receiver, and obviously in line with the purposes and objects of the bill as they were understood by the persons who wrote both, it admits that the interest of all parties will be promoted by the appointment of a receiver to take charge and control of all its property and to manage the same under the orders of the court until some arrangement can be made

with its creditors—as for instance, compromises ruinous to them and into which they would probably be induced to enter because the debtor's property had thus been put beyond their reach—and its financial embarrassment removed *so as to enable it properly to conduct its operations,* and failing such arrangement, that is if the general creditors would not submit to being thus hindered, delayed and defrauded, or would not barter away their rights for a song on account of their debtor's property being out of the reach of the ordinary process of the law, this respondent consents to the receivership till a sale can be made. The complainant in that bill having no more right to the property in controversy, no more right to have a receiver appointed to take it into possession, no more lien or claim upon it than if it had had no connection at any time with the mortgaged property or than if said complainant had not had a mortgage on any property of the Mary Lee Co., the case presented is a clear one of a collusive and fraudulent decree prayed by the complainant and consented to by the respondent for the purpose of hindering, delaying and defrauding the latter's general creditors, and, so far as this property is involved, is void under the well settled principles reiterated by this court in the case of *Little Warrior Coal Co. et al. v. Hooper,* 105 Ala. 665.

The parties to that case cannot escape responsibility on the theory which they now suggest that the decree was the action of the court or judge. If so the action was directly superinduced by them; and it might as well be said that no relief could be had against a collusive and fraudulent attachment or judgment at law because the writ is issued by an officer and the judgment is rendered by a court. But beyond this, a decree rendered by consent upon a collusive and fraudulent presentation of the case is to be taken as the act of the parties thereto and not as the judgment of the court. As said by Lord Brougham in *Earl of Bandon v. Becher*: "A sentence is a judicial determination of a cause agitated between real parties, upon which a real interest has been settled; in order to make a sentence, there must be a real interest, a real argument, a real prosecution, a real defense, a real decision. Of all these requisites, not one takes place in the case of a fraudulent and collusive suit; there is no judge, but a person, invested with the ensigns

of a judicial office, is misemployed in listening to a ficti-
tious cause proposed to him; there is no party litigating;
there is no party defendant; no real interest brought
into question."—3 Clark & Fin. 507; *Lawrence Manu-
facturing Co. v. Janesville Cotton Mills.* 138 U. S. 552;
*Tex. & Pac. Ry. Co. v. So. Pac. Co.*, 137 U. S. 48.

It is suggested also that the parties could not
have intended to hinder or delay or defraud cred-
itors by having a receiver appointed for and
put in possession of this property, since thereby
the property is brought into possession of a court of
chancery to be distributed, and when the bill alleging
fraud shows on its face what and where the property is,
and that from the reports of the receivers complainant
acquired its information as to the character and where-
abouts of the property. A complainant would know
where property which had been collusively attached or
levied upon under a collusive and void judgment was,
and he would get this information from the return of the
officer making the levy; but we are unable to see that
this argues that the judgment or attachment was not col-
lusive and fraudulent. And so the fact that the property
in possession of the receiver may, at some time in the
good pleasure of the mortgagor and the mortgagee, and
when the hindrance and delay and defeat of the cred-
itors' ordinary and lawful remedies for the collection of
their debts, have accomplished the illegal and fraudu-
lent purposes of the parties to that suit, be distributed to
the mortgagor and such of the original general creditors
as have not been forced by these meretricious methods into
sacrificing their demands, unless indeed in the mean time
this fraudulent tieing up of the property has resulted, as
intended, in arrangements whereby the mortgagor is en-
abled "to properly conduct its operations," can not exert
any force upon the inquiry of fraud *vel non* in the pro-
curement of the decree.

The complainant in the present bill is entitled to re-
lief against these collusive and fraudulent proceedings of
the complainant and respondent in the bill on which the
receivers were appointed, which proceedings have al-
ready doubtless delayed and hindered general creditors
in the assertion of their rights, and will continue to hin-
der and delay and ultimately defraud them if a remedy
is not afforded. It is quite true that this complainant

[Thornhill v. O'Rear.]

might intervene in the suit already pending by petition, but if the adequacy and completeness of that remedy be conceded, it is not exclusive. Notwithstanding the bank might thus have proceeded, it had also the right to proceed, as it has attempted to do, by an original bill.— *Talladega Mercantile Co. v. Jenifer Iron Co.*, 102 Ala. 259. This bill prays the extension of the receivership already in existence in the case of the *Mercantile Trust & Deposit Co. v. The Mary Lee Coal & Railway Co.*, to the present bill and cause. It also prays for general relief. It is not necessary for us to determine on this appeal from a decree sustaining demurrers to the bill in what form the relief to which complainant is entitled should be administered. We deem it not improper to say, however, that the case made would seem to be one eminently appropriate for the extension of the receivership as specially prayed.—*Scott v. Ware*, 65 Ala. 174; Beach on Receivers, §§ 85, 788.

The decree of the court below sustaining the demurrer to the bill is reversed ; and a decree will be here entered overruling said demurrer.

Reversed and rendered.