HENRY J. CODDINGTON, appellant,

*v.*

THE EXECUTORS OF CHARLES BISPHAM, respondents.

1. A mortgagee has no right, as mortgagee, to the rents of the mortgaged premises which have been paid into the court of chancery by a receiver appointed in a suit by legatees for the administration of the estate of the mortgagor, although the mortgagee has obtained a decree for the foreclosure of his mortgage in the same court, and has sold the mortgaged premises and part of the debt is unsatisfied. He should have applied to discharge the receiver in the administration suit, and entered into possession himself, or applied for a receiver in his foreclosure suit.

2. Rent collected by the receiver in an administration suit becomes part of the assets to be administered under the direction of the court, and the only right of the mortgagees of the premises for which rent has been collected by the receiver is, if he holds an obligation of the deceased, to come in as a creditor in common with other creditors.

3. Whenever a bill is filed in equity against executors, either by a creditor or by residuary or other legatees, touching the administration of the estate, the suit is for the benefit of all persons interested as creditors and legatees, and the court may assume the general administration of the estate and make a final disposition of the assets.

4. In the administration of estates of decedents in the court of chancery, the assets will be applied as they would be applied in the probate court. Creditors will be allowed priority over legatees, who will take nothing until the debts are paid.

5. Lands being assets for the payment of debts, rents accruing pending a suit in chancery for the administration of the estate and collected by a receiver appointed in that suit, are also assets to be applied in payment of debts.

6. The jurisdiction of chancery over suits for the administration of the

Coddington *v.* Bispham.

assets of decedents, concurrent with the probate courts, with the power to have an account taken of the assets and debts and liabilities of the deceased, and to make distribution of the residue after debts are paid, is part of the ancient and inherent jurisdiction of courts of equity.

7. The power of the court of chancery in administration suits to ascertain by its own peculiar methods the amount of the debt due to the obligee on a bond made by the deceased and secured by a mortgage, is entirely independent of section 76 of the chancery act, relating to decrees for deficiency in foreclosure suits, and is not affected by the repeal of that section by the act of 1880.

8. The act of 1881 (*P. L. of 1881 p. 184*), which provides that where a debt is secured by a bond and mortgage the first proceeding to collect the debt shall be by the foreclosure of the mortgage, and that the foreclosure and sale of the mortgaged premises shall be opened and the property be subject to redemption on payment of the decree, in case a judgment shall, after the foreclosure and sale, be recovered on the bond for the balance of the debt, is unconstitutional as applied to antecedent obligations.

On appeal from an order advised by Vice-Chancellor Van Fleet, whose opinion is reported in *Coddington* v. *Bispham, 9 Stew. Eq. 224.*

Smith Coddington died on the 11th of May, 1868. By his will he appointed Walter Brewster and John C. Coddington executors. Besides personal estate, the deceased was seized of a house and lot in Rahway. The testator bequeathed pecuniary legacies to several of his children, and charged the payment thereof on his lands in case of a deficiency of his personal estate to pay the same. The residue he gave to his children in equal shares.

In 1879, three of the legatees filed a bill against the executors, charging maladministration of their trusts—praying an account of the debts and funeral expenses of the deceased, and of his personal estate and the rents and profits of the real estate—for a receiver to collect the rents, and a decree to have their shares paid them.

On November 24th, 1879, Jacob R. Shotwell was, in compliance with the prayer of the bill, appointed receiver of the rents of the Rahway house and lot.

On October 24th, 1881, a decree for an account was taken, but no further steps have been taken in the cause.

The executors of Charles Bispham, deceased, held a mortgage on the Rahway property, made by Smith Coddington, the testator, in his lifetime, dated February 25th, 1863.

On March 23d, 1881, Bispham's executors filed a bill to foreclose the mortgage, and March 20th, 1882, obtained a decree of foreclosure and sale. The property was sold under the decree June 28th, 1882, and a balance of $1,200 of the mortgage debt was left unpaid, for which the executors hold Smith Coddington's bond.

Shotwell, the receiver, filed a report July 12th, 1882, stating that he had received the rent of the house and lot from April 1st, 1880, to April 1st, 1882, and showing a balance in his hands of $337.85, after paying expenses.

The executors of Bispham filed a petition asking that the sum of $337.85 should be applied in payment of the debt remaining due on the bond.

It was admitted that the expenses of the administration and all the testator's debts, except the balance due on the bond, had been paid, and that the only persons who have any right to the balance in the receiver's hands are the executors of Bispham and the legatees under the will.

The vice-chancellor granted the prayer of the petition, and ordered the money paid over on the bond. From this order Henry J. Coddington, one of the complainants, appealed.

*Mr. H. K. Coddington,* for appellant.

*Mr. R. E. Chetwood,* for respondents.

The opinion of the court was delivered by

DEPUE, J.

This case was heard in the court of chancery very informally, by consent of parties. The substantial controversy there was, whether creditors or legatees under the will of the deceased

had priority of payment out of the fund paid into court by the receiver.

As mortgagees, the executors of Bispham are not entitled to this fund on the ground that they were suitors in the court of chancery for the foreclosure of the mortgage. The receiver was appointed in another suit. A receiver appointed in a suit is appointed for the benefit of such of the parties in that suit as afterwards appear to be entitled to the fund in controversy, but not for the benefit of strangers to the suit. *Thomas* v. *Brigstocke, 4 Russ. 64; Howell* v. *Ripley, 10 Paige 43; Post* v. *Dorr, 4 Edw. Ch. 412; In re Ingraham, 2 Barb. Ch. 35.* A mortgagee has no title to the rents of the mortgaged premises which have been paid into court by a receiver appointed in a suit for establishing the will of the mortgagor, notwithstanding he may, after the receiver's appointment, have given notice to the tenants to pay the rents to him. He should have followed up the notice by applying to discharge the receiver, and then entered into possession himself, or filed his bill and applied for a receiver in his own suit. *Thomas* v. *Brigstocke, supra; 2 Jones on Mort.* § *1524.*• He cannot in this way obtain priority over other creditors whose debts would be of equal degree with the mortgage debt in the general administration of the estate. A court of equity will always, in the administration of assets, place all the creditors on an equality as far as possibly can be done without disturbing existing liens. *State Bank* v. *Receivers, 2 Gr. Ch. 266.* The executors can make claim to the fund only as creditors, and on the ground that the moneys are assets for the payment of debts.

The legatees might have taken proceedings to obtain the account in the orphans court, but the court of chancery having jurisdiction over the accounting of executors concurrent with the orphans court, the legatees filed a bill for an account in that court. The selection of the court of chancery as the forum of the litigation did not affect the relative rights of creditors and legatees in the assets of the estate. On a bill filed for an account, the equity court may take the account and retain jurisdiction over the subject until the entire litigation is ended, and may

make a distribution of the assets among the persons entitled. Whenever a bill is filed in equity against executors, either by a creditor or by residuary or other legatees, touching the administration of the estate, the suit is for the benefit of all parties interested, and the court may assume the general administration of the estate. *Ram on Assets, 294, 298*; 1 *Story's Eq. Jur.* § 543 a; *Brooks* v. *Reynolds*, 1 *Bro. C. C. 183*; *Drewry* v. *Thacker, 3 Swanst. 529*; *Clarke* v. *Earl of Ormonde, Jac. 108, 111, 121*; *3 Wms. on Exrs. 2034*; *Brooks* v. *Gibbons, 4 Paige 374*; *Salter* v. *Williamson, 1 Gr. Ch. 480, 490*; *Van Mater* v. *Sickler, 1 Stock. 483, 485*; *Clark* v. *Johnson, 2 Id. 287*.

The theory on which a court of equity in such cases proceeds to a final account and the administration of the estate is, that the court, having obtained jurisdiction, will retain the subject-matter until a final accounting, and until a distribution of the assets is made. *1 Story's Eq. Jur.* § 533 a, 536; *Wager* v. *Wager, 89 N. Y. 161*; *Youmans* v. *Youmans, 11 C. E. Gr. 149*. In the course of such an administration in the court of chancery, the assets will be applied as they would be applied in the probate courts, and creditors will be allowed priority over legatees even when the assets are. equitable assets, and legatees will take nothing until the debts are paid. *1 Story's Eq. Jur.* § 555.

The debt due to Bispham was secured by a bond made by Coddington in his lifetime, as well as by the mortgage. Part of it had been paid out of the proceeds of the forelosure sale; the balance was a subsisting debt, to be paid out of the assets of the estate of the obligor. As creditors in virtue of the bond made by the deceased, the executors of Bispham were parties to the complainants' suit, which drew into the court of chancery the entire administration of the assets, and was a suit for the benefit of all persons interested either as creditors or legatees.

In *Mallory's Admr.* v. *Craige, 2 McCart. 73*, Craig died leaving no personal estate for the payment of debts, and seized of a lot of land in the city of Newark. After his death the lot was taken by the city for a street, and the appraised value paid to the city treasurer. On a bill filed by Mallory, a creditor of the deceased, to have his debt paid out of this fund, Chancellor Green

held that the proceeds of the lands in the city treasurer's hands were assets for the payment of debts. He stated that the general practice in such cases was not to send the parties to the orphans court for a final settlement, and that ordinarily, when the parties were before the court, the final account was settled in chancery; and the fund being small, and in his opinion justice being more speedily attained by having the final account taken in the court of chancery, the chancellor directed a reference to a master to take an account of the debts and credits of the estate, giving creditors reasonable notice to come in and prove their debts.

The lands whereof the testator died seized being assets for the payment of debts, and the court having taken charge of all the assets, real and personal, for the purpose of administration, rents realized while the lands were in the custody of the court in the process of administration are assets for the payment of debts equally with the lands themselves.

The legatees contend that the creditors should have been remitted to other assets in the hands of the executors. But the legatees suffered their suit to rest with a decree for an accounting, and it is undetermined whether anything shall be found due from the executors, and whether they have the ability to pay. As between creditors, who are entitled to be paid first, and legatees, who take only the surplus after debts are paid, the equity is wholly in favor of the former, to have the assets in hand applied in satisfaction of their demands.

Objection was made on the ground that the vice-chancellor ascertained the amount of this debt. The bond was secured by a mortgage, and the 76th section of the chancery act (*Rev. p. 118*), relating to decrees for deficiency in foreclosure suits, having been repealed by the act of 1880 (*P. L. of 1880 p. 255*), it was insisted that chancery had no power in any way to ascertain the amount of the debt due on this bond. But the jurisdiction of the court of chancery to superintend the administration of assets and decree a distribution of the residue after payment of all debts and charges, concurrent with the probate courts, is part of its jurisdiction, established as early as Charles

Coddington *v.* Bispham.

II. *1 Story's Eq. Jur.* §*542; Clark* v. *Johnson, 2 Stock. 287.* And the power of the court in taking an account before a master to ascertain the debts and liabilities of the estate is also ancient and equally well settled. Its jurisdiction in that respect is entirely independent of the section of the chancery act referred to.

The orderly course of practice would have been by a reference to a master to take an account of the assets and of all the debts of the deceased. But this course was dispensed with at the solicitation of the parties, who admitted that this was the only debt unpaid, and, waiving all formalities, desired only an opinion whether, in the due course of the administration of the fund in question, it should be paid to the creditors or to the legatees. The prayer of the complainants' bill is that an account should be taken of the debts and funeral expenses of the deceased, and that payment be made to the complainants of their respective shares. Until the debts were ascertained and paid, the relief prayed could not be granted. In form and substance the bill is a bill for the general administration of the estate.

It was further insisted that the creditor should have been put to an action at law upon the bond, to the end that the foreclosure and sale of the mortgaged premises might be opened by any judgment recovered for the balance of the debt due on the bond, pursuant to the 3d section of the act of 1881. *P. L. of 1881 p. 185.* The creditor's bond was made February 25th, 1863. The act of 1881 impaired the value of the mortgage security by subjecting the purchaser's title to conditions of redemption which did not exist when the contract was made, and thereby diminished the vendible value of the mortgaged premises. As applied to antecedent obligations, the act of 1881 is unconstitutional and void as impairing the obligation of contracts. *Baldwin* v. *Flagg, 14 Vr. 495–504.*

The decree should be affirmed.

*Decree unanimously affirmed.*

Note.—See *Kring* v. *State, U. S. Sup. Ct., April, 1883 ; Miller, J. 27 Alb. L. J. 347, 351, 16 Cent. L. J. 308, 312.*—Rep.