JOHN T. WYCKOFF

*v.*

LYDIA B. HOLMES.

[Decided October 31st, 1913.]

1. Neither a collateral mortgagor, her subsequent grantee, nor her subsequent mortgagee, are necessary parties in a suit to foreclose the principal mortgage.

2. A mortgagee secured by collateral mortgage, where the collateral mortgage is to become void on the payment of the principal mortgage, is not bound to sue on the bond given with the principal mortgage for a deficiency, but may foreclose on the collateral mortgage instead.

3. Where the mortgagee of the principal mortgage forecloses, and buys the property in himself for less than the amount due, and then sells the property, *making himself more than whole thereby, he may still foreclose on the collateral mortgage for the deficiency, or sue on the bond of the principal mortgagor.*

4. The words of a guaranty contained in a collateral mortgage will be construed most strongly against the guarantor.

On pleadings and proofs.

*Mr. Clarence Conover* and *Mr. Frank P. McDermott,* for the complainant.

*Mr. John E. Foster,* for the defendant.

LEWIS, V. C.

This action is brought to foreclose a collateral mortgage in order to collect a deficiency of $1,664.71 alleged to be due complainant, with interest from May 5th, 1911, under the following circumstances:

On May 26th, 1909, Adelia N. Holmes, a maiden lady nearly eighty years old, was the owner of two mortgages, one for $3,000 made by Elizabeth A. Kennedy and James F. Kennedy, her husband, to her, on lands at Long Branch, to secure the payment

of $3,000 with interest; and the other mortgage made to her by Ella V. Vail and Charles D. Vail, her husband, on lands at Keansburg, to secure the payment of $3,500 with interest.

At the same time Jacob and Joseph M. Wyckoff were the owners of a house and lot on the corner of Broad and Cross streets, in the borough of Keyport.

On the day named Miss Holmes purchased from the Wyckoffs this property, for the sum of $6,500, and paid the purchase price therefor by assigning to the Wyckoffs the above mentioned Kennedy and Vail mortgages, totaling $6,500, and at the same time she also executed and delivered to the Wyckoffs a mortgage on the Broad and Cross streets property in which she then resided as a tenant, for $6,500, and after reciting the assignment of the two mortgages to them, she stated therein that the condition of this collateral mortgage which she then and there gave was as follows:

"Provided always, and it is agreed by and between the parties to these presents, that if one Elizabeth A. Kennedy and James F., her husband, do and shall well and truly pay, or cause to be paid to the said party of the second part, or to their certain attorney or attorneys, heirs, executors, administrators or assigns, the principal and interest of a certain mortgage for the sum of three thousand dollars, covering lands in the city of Long Branch, Monmouth county, New Jersey, made by said Elizabeth A. Kennedy and husband to said Adelia N. Holmes on October the tenth, nineteen hundred and eight, and recorded in the Monmouth county clerk's office in book 363, page 466, &c.

"And provided further, that if one Ella V. Vail and Charles D., her husband, do and shall well and truly pay, or cause to be paid to the said party of the second part, or to their certain attorney or attorneys, heirs, executors, administrators or assigns, the principal and interest of a certain mortgage for the sum of three thousand five hundred dollars, covering lands at Keansburg, Monmouth county, New Jersey, made by said Ella V. Vail and husband, to said Adelia N. Holmes on October the third, nineteen hundred and eight, and recorded in the Monmouth county clerk's office in book 365, page 201,—this said mortgage being collateral security for the payment of the said mortgages above referred to, assigned by the said party of the first part to the said party of the second part, then and from thenceforth these presents and said obligation and everything herein and therein contained, shall cease and be void, anything herein and therein contained to the contrary in anywise notwithstanding."

At the time of acquiring title Miss Holmes instantly conveyed the property which she had just purchased for $6,500 to

a niece, Minerva Roberts, for the sum of $6,000, and accepted from said Minerva Roberts a mortgage upon the said property for $6,000 in payment of the purchase price therefor. Mrs. Roberts entered into possession of the property and Miss Holmes continued to live with her.

Joseph M. Wyckoff died some time after the assignment of the two mortgages to himself and his brother, Jacob, and subsequently, by assignment from Jacob and the executors of Joseph M. Wyckoff, the two mortgages were eventually assigned to John T. Wyckoff, who proceeded in 1910 to foreclose the Kennedy mortgage, and the amount due thereon was realized at the foreclosure sale.

Complainant in May, 1911, also foreclosed the Vail mortgage and obtained a decree with costs, &c., for the sum of $4,164.71. At the foreclosure sale on May 5th, 1911, the Vail mortgage, complainant bought in the property for the sum of $2,500, and left an apparent deficiency of $1,664.71 due on his decree.

Mrs. Minerva Roberts held the title of the premises now attempted to be foreclosed until February 2d, 1912, when she conveyed to John P. Lloyd, who, in turn, conveyed to Lydia B. Holmes, on February 29th, 1912.

On December 27th, 1910, Adelia M. Holmes assigned to the said Lydia B. Holmes the mortgage for $6,000 made by Minerva Roberts.

Persons by the name of Finks purchased the property from the Vails and assumed the payment of the mortgage thereon.

In neither of these foreclosure proceedings was Adelia M. Holmes, Minerva Roberts, or the defendant, Lydia B. Holmes, made a party.

In September, 1911, complainant sold the Vail-Fink property, which he had purchased at the foreclosure sale for $2,500, to Dr. R. H. Downes and his wife for $4,700 cash. During the four months the complainant had owned the property he had had the house painted and made some other repairs to it at a total cost of between $200 and $300. He had, therefore, come out ahead whether or not he sued on the Vail bond or foreclosed the collateral mortgage.

The complainant never demanded the payment by, or brought

suit on the bond, or in any other way attempted to recover the amount of this deficiency from the Vails, the parties primarily liable for the payment therefor, as the original obligors and mortgagors; or from the Finks, the parties who purchased the property from the Vails and assumed the payment of the mortgage thereon.

In November, 1911, complainant brought this action to foreclose the collateral mortgage.

No bond was given with the collateral mortgage.

It is contended by the defendant that Adelia N. Holmes, Minerva Roberts and herself were necessary and proper parties in the suit brought to foreclose the Vail-Fink mortgage. I find that this contention is untenable.

In *Jarman* v. *Wiswall, 24 N. J. Eq. (9 C. E. Gr.) 267,* the chancellor stated that a guarantor is not a necessary party to a foreclosure suit, but that he was a proper party. This was under the act of 1867, that:

"It shall be lawful for the chancellor in any suit for the foreclosure or sale of mortgaged premises, to decree the payment of any excess of the mortgage debt above the net proceeds of the sale by any of the parties to such suit who may be liable either at law or in equity for the payment of the same."

That statute is no longer in force, and I do not think that the guarantor is even a proper party.

The second contention of the defendant is that by the condition of the collateral mortgage the complainant should have exhausted his remedy against Mr. and Mrs. Vail before commencing an action to foreclose the collateral mortgage, and that it was necessary for the complainant to have exhausted his remedy against the Vails' mortgaged premises, and their other property, if any, for the entire amount due on the bond and mortgage, before resort could be had to the property of the surety pledged by the collateral mortgage.

The condition of the collateral mortgage is that if the Kennedys and Vails paid the principal and interest of their respective mortgages, then and from thenceforth the obligation of the collateral mortgage should cease and be void.

Under that condition in the collateral mortgage it is my opinion that the complainant could (if he had chosen so to do) have brought suit on the collateral mortgage after the due date of the two mortgages, without any further steps being taken. If there is any doubt as to the construction of the guarantee the rule in this state is that the construction against the grantor is to be followed. See *Hoey* v. *Jarman, 39 N. J. Law (10 Vr.) 523.*

The complainant, if he had chosen so to do, could have sued on the Vail bond for the deficiency, but he was not bound so to do.

At the time of the sale under foreclosure of the Vail-Fink property Minerva Roberts was the owner of the property embraced in the mortgage now under foreclosure, and the defendant, Lydia B. Holmes, held the legal title to the mortgage for $6,000. The owner of the property, Minerva Roberts, was notified of the foreclosure, and Lydia B. Holmes on the witness-stand admitted her knowledge of the foreclosure and sale in the Vail-Fink foreclosure case.

It is true that the complainant bought the Vail property in at the foreclosure sale for $2,500, leaving a deficiency of over $1,600, and that within four months thereafter he sold the property, having first made some improvements on it, and made a profit out of the transaction; it is also true that by section 48 (at *p. 3421*) of the Compiled Statutes of New Jersey, suit on the bond for the deficiency must be begun within six months from the date of the sale; it is also true that had the complainant brought an action on the bond and had then proceeded against the collateral mortgaged estate, the equity of redemption would have been opened and this defendant could have come in, paid the deficiency claimed by the complainant and redeemed the premises. The complainant, therefore, makes a profit out of the transaction, while Vail escapes his liability on the deficiency through the neglect or ignorance of the defendant, who may have assumed that everything would come out all right in the end.

If there were any evidence before the court of any fiduciary relationship existing between Adelia M. Holmes and the Wyck-

offs, I should find that there was a constructive trust; but, although in the brief of Judge Foster there is an intimation that Miss Holmes made the purchase of the property and executed the complainant's mortgage without independent advice, yet there is no proof whatever on the subject, and nothing in the pleadings to make such proof pertinent or relevant.

I shall, therefore, advise a decree that the defendant pay the full amount asked in this suit.