There are three claimants to the fund: the complainant, second mortgagee; the National Commercial Title Mortgage Guaranty Company, first mortgagee, and Arthur G. Teweles, the vendor named in a conditional sales contract covering electric refrigerators installed in the mortgaged premises. The last two named were not parties to this cause until the question of distribution arose, when they were admitted so that their claims might be heard.
Shortly after the receiver was appointed, Mr. Teweles petitioned the court to instruct the receiver to permit the removal of the refrigerating equipment or else to make the monthly payments of $200 each, specified by the conditional sales agreement. After argument, a consent order was entered that the receiver pay Mr. Teweles $100 monthly. These payments were duly made until the mortgaged premises *Page 258 
were sold by the sheriff and the receiver lost possession, at which time a balance of $800 remained payable on the conditional sales agreement. This balance Mr. Teweles asks be now paid him out of the fund.
Mr. Teweles has always claimed and still claims the right to remove his equipment from the building. That right is not disputed; it was impliedly recognized by the order for the payment of $100 monthly. For if the sales agreement had not been enforceable against the mortgagees and the receiver, the receiver would not have been directed to pay anything to Mr. Teweles. The payments were ordered to induce Mr. Teweles to stay his hand, so that the receiver, retaining the use of the refrigerators, would be able to rent the apartments. This was a business arrangement; Mr. Teweles had no legal or equitable right in the rents of the mortgaged premises, but only a right to remove his property. That right he presumably still has and may exercise against the present owner of the real estate. Bank of America NationalAssociation v. La Reine Hotel Corp., 108 N.J. Eq. 567. But he has no title in the fund in court. His claim is denied.
The National Commercial Title Mortgage Guaranty Company (hereinafter called the Company) filed a bill to foreclose its mortgage October 2d 1929, but allowed its suit to remain dormant for a long time. The following June, Mr. Berman, the second mortgagee, filed his bill in the present cause and the receiver was forthwith appointed on his motion. The Company took a final decree in its suit December 3d 1930, execution issued, and in due course the property was sold thereunder by the sheriff. The amount realized by the sheriff was insufficient, by many thousands, to satisfy even the first mortgage. Until that sale, the receiver appointed in the second mortgagee's suit remained in possession and collected the rents.
The bond which the Company holds and which is secured by its mortgage, contains an agreement that "in case of any default in the performance of any of the covenants of this bond persisted in thirty days after notice in writing from *Page 259 
said obligee to said obligor, said obligee may enter upon and take possession of said mortgaged premises, collect the rentals * * * and said rents and profits in the event of such default asaforesaid are hereby assigned to said obligee." The mortgage sets forth that all covenants in the bond shall bind the successors and assigns of the parties. Prior to December 14th, 1928, a default in one of the covenants of the bond occurred and written notice from the Company to the owner of the land was given on that day, and thereafter the default continued for more than thirty days. Wherefore, says the Company, all rents accruing since that time have belonged to it, whether collected by the owner of the fee or by the receiver.
Complainant replies that the assignment of rents contained in the bond should be construed as a pledge which did not entitle the mortgagee to the rents until the mortgagee should take possession of the premises. Bermes v. Kelley, 108 N.J. Eq. 289.
To sustain this construction of the assignment, he relies on Sullivan v. Rosson, 223 N.Y. 217; 119 N.E. Rep. 405;4 A.L.R. 1400. But decisions of the court of chancery preclude me from so interpreting the assignment. An assignment of rents contained in a mortgage, but substantially the same as the one now before the court, was considered in Stanton v.Metropolitan Lumber Co., 107 N.J. Eq. 345. That was a controversy between a mortgagee and the receiver of an insolvent corporation. Vice-Chancellor Backes held, "the assignment, though conditional, became absolute upon default of the mortgage debt and was valid and enforceable against the assignor; and the receiver had no advantage. As the rents accrued, after the default, the ownership was in the assignee; the title was never in the receiver and he, having collected them, is accountable." See, also, Paramount Building and Loan Assn. v. Sacks,107 N.J. Eq. 328, and New Jersey National Bank and Trust Co. v.Wolf, 108 N.J. Eq. 412. In my opinion, however, these cases do not dispose of the present controversy. As noted above, the default required by the bond to make the assignment of rents operative occurred in 1928. For two years thereafter the Company watched the tenants pay rent to the *Page 260 
owner of the land or to the receiver and permitted, without objection, the owner and the receiver not only to collect the same but also to disburse the moneys received just as if the Company claimed no title to the rents. The Company never demanded the rents from the tenants or from any of the parties until its present application was filed. This course of conduct was inconsistent with the notion that the rents belonged to the mortgagee; it operated as a waiver of any right to the rents which the Company had under its assignment.
The Company buttresses its claim from another angle. The order appointing the receiver directed him currently to disburse the rents received first for operating expenses, and "secondly toward the payment of accrued taxes and water rents, and interest and installments accrued or hereafter to accrue on the first mortgage." In spite of this direction, the receiver has not paid anything on account of taxes, or of the first mortgage. The Company claims the benefit of the provisions of the order above quoted. "A receiver appointed in a suit is appointed for the benefit of such of the parties in that suit as afterwards appear to be entitled to the fund in controversy, but not for the benefit of strangers to the suit." Coddington v. Bispham'sExrs., 36 N.J. Eq. 574; Longdock Mills and Elevator v. Alpen,82 N.J. Eq. 190; Schreiber v. Green, 90 N.J. Eq. 333. The Company was a stranger to the suit when the receiver was appointed. Ordinarily, only a party to the cause can complain if an order made therein be violated. If there were nothing but the order to support the Company's claim, I doubt that it could succeed in its petition for the fund. Complainant argues plausibly that the direction for payments on account of prior liens was not made for the benefit of the holders thereof but for the benefit of the parties to the cause; that the court can amend the receiver's instructions without regard to the interest of the prior lienors. See, however, Ranney v. Peyser, 20 Hun 11;83 N.Y. 1, and comment thereon in New Jersey Title Guarantee andTrust Co. v. Cone Co., 64 N.J. Eq. 45. *Page 261 
But there is still an additional factor which, in my opinion, tips the scales in favor of the Company. After the receiver was appointed, complainant repeatedly urged the Company to withhold prosecution of its foreclosure suit, and employed as an argument the receiver's instructions to make payments on account of its mortgage. Clearly implied was the representation that complainant would not demand the fruits of the receivership to the exclusion of the Company. The argument succeeded: The Company was pursuaded to take no action for many months; it was lulled into a sense of security; it never applied for a receiver in its own suit. The complainant is estopped from denying to the Company the benefit of the directions given the receiver. It is, indeed, the general rule that equitable estoppel must be founded on a representation of a fact and not an opinion, a representation relating to the present and not the future. Central Railroad Company of NewJersey v. MacCartney and McElroy, 68 N.J. Law 165, 175.
"However, a well recognized exception to the rule is presented where the statement relates to an intended abandonment of an existing right, and it is made to influence others who have in fact been influenced by it." 21 C.J. 1142.
There is one more point to be considered. The Company bought in the property at the sheriff's sale and shortly thereafter conveyed it to a third party for a consideration sufficient to cover the deficiency. Complainant says that by reason of this resale, there remains no deficiency and hence the Company is not entitled to any of the fund. This is not sound. The amount of the deficiency is fixed by the decree in the foreclosure suit and the price received on the sheriff's sale. Fischer, Exr., v.Spierling, 93 N.J. Law 167. An advantageous resale does not reduce the deficiency. Wyckoff v. Holmes, 82 N.J. Eq. 536;Ramsden v. Keene, c., Bank, 198 Fed. Rep. 807;117 C.C.A. 449. The fund should be paid to the Company. *Page 262