This trust, which was created inter vivos June 23d 1930, has been the subject of prolonged litigation over certain mortgage investments. Rothenberg v. Franklin-Washington Trust Co.,127 N.J. Eq. 406; 129 N.J. Eq. 361; 131 N.J. Eq. 463; 133 N.J. Eq. 261; 135 N.J. Eq. 562. In 1940, the trustee presented its second intermediate account and immediately its right to account was challenged and, of course, upheld. 129 N.J. Eq. 377. By stipulation, the accounting proceeding was stayed until the mortgage suit, as I will call Rothenberg v. Trust Co., was disposed of. Now the second account and also a third account and a petition of the Trust Company for instructions and for its discharge from the office of trustee, are brought before the court.
 A.
Exceptions are taken to the allowance of $462 paid by the trustee to Nicholas W. Bindseil for transcript of testimony ($809, less reimbursement by mortgage company, $347) and $375 paid Joel Schlesinger for expert testimony in the mortgage suit. When counsel for the Trust Company applied in 1940 for the final decree in Rothenberg v. Trust Co., he asked for counsel fee, costs and certain disbursements which included these items. But the Trust Company was not allowed even costs.
It may be that there was no direct adjudication that the disbursements of the Trust Company in the litigation should or should not be paid out of the trust fund. But from the *Page 532 
opinions rendered in the Court of Errors and Appeals, and from the remittiturs, the sense of that court appears that all expenses of the trustee in the mortgage suit, as well as a large part of the expenses of the other parties, should be borne by the trustee individually. The Trust Company, indeed, acknowledges this, so far as taxable costs and counsel's bill are concerned, and does not pray allowance of these expenses. No reason appears why the items now in question should be handled in a different manner. The exceptions are sustained.
The second account shows among the assets the sum of $1,521, carried in a suspense account pending final decision whether it belongs to the trustee or to the Franklin Mortgage and Title Guaranty Company. The item arises from two mortgages, part of the trust fund. One of the mortgages, covering 5 Woodbine Avenue, Newark, was made by High Towers, Inc., to the mortgage company, to secure $8,000 with interest at 6 per cent. The mortgage company assigned to the trustee a $7,900 interest in the mortgage and retained a subordinate $100 interest itself. At the same time, it guaranteed payment of principal to the extent of $7,900 with interest at 5 1/2 per cent. Thereafter, on July 1st, 1934, the mortgagor and its grantee defaulted in the payment of six months' interest then due. But meanwhile, in March, 1933, the Commissioner of Banking and Insurance, by General Order No. 1, by authority of P.L. 1933 ch. 71, forbade mortgage companies, including the Franklin Mortgage and Title Guaranty Company, to make payments of principal or interest, pursuant to their guarantees. Accordingly, the mortgage company did not pay, and has never paid, to the trustee any of the interest which fell due in 1934, or thereafter, or any of the principal.
In 1935, the trustee foreclosed and bought in the property at the sheriff's sale for $100. On September 24th, 1935, the trustee sold the property to Donald McNaughton and wife for $950 in cash and a purchase-money mortgage of $8,500. The mortgage was paid off in 1938. The mortgage company says that $947 received on the resale was profit and belongs to it.
The foreclosure sale left a deficiency of $8,217 on the bond of High Towers, Inc. The amount due on the bond was *Page 533 
definitely fixed by the sale and was not affected by any subsequent resale. Berman v. 145 Belmont Ave., 109 N.J. Eq. 256; 112 N.J. Eq. 171. At the same time, there was due to the trustee by the mortgage company on its guarantee only part of the whole sum owing on the mortgage bond, namely, for principal $7,400, and interest at 5 1/2 per cent., instead of 6 per cent. The exact amount of the debt of the mortgage company on its guarantee, like the debt on the mortgage bond, was fixed by the foreclosure sale and was not subject to reduction by the creditor's resale of the mortgaged premises. Wyckoff v.Holmes, 82 N.J. Eq. 536; Ramsden v. Keene, c., Bank,198 Fed. Rep. 807; 117 C.C.A. 449. A purchaser at the foreclosure sale, whether the mortgagee or a stranger, takes title free of equities of mortgagor or guarantor. The mortgage company had no more interest or concern in 5 Woodbine Avenue after the trustee had bought it, than it had in any other part of the trust fund. It follows immediately that the mortgage company has no interest in the price which the trustee received on the resale.
To avoid this conclusion, the mortgage company argues that, except for the order of the Commissioner of Banking and Insurance, it would have paid what was due on the guarantee, taken an assignment of the mortgage, foreclosed and bought the property itself, and so made the profit. Perhaps. More likely the mortgage company would have gone into bankruptcy and paid a small dividend to creditors. But we need not speculate on what might have been. The Commissioner's order, assuming its validity, excused the mortgage company from fulfilling its contract, and doubtless for this reason, the trustee did not bring an action against it on the guarantee. Williston on Contracts, § 1938.
But on no principle of law or equity, did the order operate to vest in the mortgage company any right or title in the mortgaged premises when bought by the trustee at the foreclosure sale.
The rest of the money in the suspense account arose from the Sherwood Parkway mortgage. The essential facts are the same as those above recited. The money is part of the trust corpus. *Page 534 
 B.
The trustee sets forth in its petition that it is in doubt whether the trust fund is subject to the New Jersey inheritance and estate taxes and the federal estate tax, which might be levied on the theory that the creation of the trust was a transfer to take effect at the death of the donor of the trust, the late Samuel A. Rothenberg. The trustee prays that the court instruct it whether these taxes are to be assessed against the trust and what part, if any, are payable out of the trust fund. No representative of the state or of the federal government is a party to, or has been notified of, this petition. Although Mr. Rothenberg died in 1932, no taxes of the kind mentioned have been levied on his estate, inasmuch as he died insolvent. Chancery has no jurisdiction over taxation, or to determine whether the trust fund is a part of the decedent's estate within the contemplation of the tax statutes. Even if some equitable ground were found for interfering with the subject, as sometimes happens, the court would not act in a proceeding in which the taxing authorities have no opportunity to be heard. While the court may instruct a trustee as to matters arising in the administration of the trust, it may not, under the guise of instructions, adjudicate that a tax is, or is not, payable. The prayer for these instructions will be denied.
 C.
The Trust Company prays for its discharge, and those beneficiaries who have appeared consent. The mortgage investments and the litigation growing therefrom, have given rise to so much antagonism between the trustee and some of the beneficiaries, that a change is desirable. The prayer will be granted.
The Trust Company asks for a small commission on corpus for its services. The beneficiaries object on the ground that the trustee was faithless to its trust. In the mortgage suit, while it was decided that the mortgage investments were illegal, it was also determined that the Trust Company acted with entire good faith, and was entitled to retain commissions *Page 535 
on income which it had received. The accusation of bad faith cannot be entertained in opposition to the prayer for corpus
commissions.
The Trust Company has been administering the trust estate since 1932 — nearly thirteen years — with most satisfactory results. The corpus has increased several thousand dollars. Ordinarily, the commission asked would be granted, as of course, but there is a circumstance which forbids. When the Trust Company undertook the trust, it agreed with the donor to accept as its compensation 5 per cent. on income during the first 10 years, 3 per cent. on income thereafter, and "one per cent. on the amount of the said trust when it shall be distributed by the trustee under said (trust) agreement." What induced the company to agree to such inadequate pay, I do not know. Perhaps inexperience with the headaches of trusteeship; perhaps a desire to build up its trust business, even at a loss. However, it made the bargain. The rule is well settled that such an agreement is binding upon the parties to it, and the beneficiaries of the trust, and controls the court. Commercial Trust Co. v. Spiegelberg, 117 N.J. Eq. 171; 119 N.J. Eq. 376. The trust is likely to continue a dozen years more and a new trustee must now be appointed. The court may award adequate compensation to the new trustee, notwithstanding the agreement as to commissions made by the original trustee. Inre Battin, 89 N.J. Eq. 144. None qualified for the post of trustee will accept the trust, except on the ordinary terms of 5 per cent. on income and such commissions on corpus as the court may allow. Though the retiring trustee be paid nothing, the trust will inevitably be burdened with commissions in excess of those stipulated in the agreement between the donor and the Trust Company. Since this situation results from the discharge of the company at its own request, the burden should not be still further increased by awarding the company a commission oncorpus.
 D.
Mr. Unger asks a fee for services rendered as counsel for the trustee, unconnected with the litigation which grew from *Page 536 
the mortgage investments. He was allowed a fee of $2,000 May 23d 1933, for services during the first year of the trust, and sundry small amounts since then. I have considered with care how much should be allowed, mindful that I cannot be generous with other folk's money and also remembering that the laborer is worthy of his hire. The present value of the estate exceeds $250,000. Mr. Unger will be awarded out of corpus the taxed costs of the two accountings and a fee of $2,500 for all services up to and including turning over the fund to the new trustee; except that if the beneficiaries appeal from the decree on these proceedings, a further allowance will be considered. Mr. Unger should also be paid $110.50 for disbursements.
Mr. Mindes, counsel for two beneficiaries of the trust, Mrs. Esther Rothenberg and her son Jerome Rothenberg, asks a fee for services rendered them in the mortgage suit. The court in that cause had discretionary authority, both by precedent and statute to allow him taxed costs, including a counsel fee, to be paid either out of the fund, or by some other party to the litigation. The court did allow him costs and a fee of $5,000 and charged the same against the Trust Company. If this sum did not adequately compensate him, his clients are obligated to pay any balance owing him. But in these accounting proceedings, he can be allowed nothing for services in the mortgage suit.
Mr. Mindes relies on Wasmuth-Endicott Co. v. WashingtonTowers, 110 N.J. Eq. 1, an accounting by the receiver of an insolvent corporation. A fund had come into his hands subject to an unliquidated charge for services of a rent receiver appointed in a foreclosure cause. The court, in the insolvency proceeding, gave effect to the charge. But in the matter before me, Mr. Mindes has no lien or charge upon the trust fund. He is merely a creditor of two beneficiaries, his clients — even though his claim arose out of work connected with the trust — and he cannot reach the fund in this informal manner, to collect what they owe him.
Mr. Mindes also represents his clients on the accountings and will be allowed in this capacity $750, one-third out of income and two-thirds out of corpus. *Page 537 
 E.
Mr. Harry Schaffer, a solicitor and counsellor of this court, petitions for an allowance out of the estate for his services and disbursements as guardian ad litem. Upon the institution of the mortgage cause, he was appointed, on the petition of one of the complainants, Mrs. Rothenberg, guardian ad litem for Samuel A. Rothenberg, Jr., an infant defendant in that cause. From the decree therein of September 8th, 1941, cross-appeals were taken by the Trust Company and the guardian ad litem and other parties, in which the guardian was largely successful. The Court of Errors and Appeals allowed him his costs on the appeal, $22.50, but the remittitur contained nothing about a counsel fee. When a decree was entered in Chancery in conformity with theremittitur, Mr. Schaffer applied for an allowance for services rendered and disbursements incurred by him upon the appeal. His application was denied, but without prejudice to any application in a proceeding involving the trust estate or against the ward.
Mr. Schaffer now asks for compensation and reimbursement of expenses for the period May 14th, 1941, to June 1st, 1942, namely, on the appeal. He has been paid in the mortgage suit $3,469 for services and expenses prior to May 14th, 1941, and a fee of $1,000 for the period subsequent to June 1st, 1942. The infant, Samuel A. Rothenberg, Jr., a soldier, gave his life for his country October 19th, 1944. He had no interest in the trust estate which survived to his personal representative, and his personal representative is not a party to the present proceedings.
Under the established practice of this court, a next friend who prosecutes, or a guardian ad litem who defends on behalf of an infant, is entitled to no compensation for his services unless he is a lawyer and personally conducts the litigation. He has, however, a right to reimbursement for his reasonable expenses; and counsel employed by him has a right to a reasonable fee, assuming that the services of counsel were necessary. If the next friend or guardian acts as counsel himself, as did Mr. Schaffer, he is entitled to the fee. Who is liable for the expenses and counsel fee, and how is the *Page 538 
liability to be ascertained and enforced? The estate of an infant who sues by next friend, is liable for the latter's expenses.Voorhees v. Polhemus, 36 N.J. Eq. 456. It seems that the next friend's proper expenses and a reasonable counsel fee, can be recovered in an action of assumpsit against the infant complainant. Crafts v. Carr (R.I.), 53 Atl. Rep. 275. But in a suit against an infant, I would think that the complainant, the one who necessitates the appointment of the guardian adlitem, is the one who must prima facie pay, although even this statement is hazardous since the whole subject is so much within the discretion of the court. 31 C.J. 1144; 7 A.L.R. 108;9 A.L.R. 1537. Just as in litigation between parties who are allsui juris, the burden of costs and counsel fees may be shifted from one to another or to a fund under control of the court, in accordance with the equities of the case, so with the expenses of the guardian. For example, the first allowance to Mr. Schaffer was put on the Trust Company, the second allowance was ordered paid out of the trust fund.
But in all our New Jersey decisions, which have come to my attention, the order for the costs, expenses and counsel fee of the representative of the infant has been made in the cause in which the next friend or the guardian acted for the infant. The guardian is the officer of the court for the particular cause only and should have the amount due him and the source of payment definitely fixed by order made in that cause. I will deny Mr. Schaffer's prayer for compensation for services in the mortgage suit, for the same general reason I denied Mr. Mindes', namely, that in one cause of proceeding, an allowance should not be made to a guardian ad litem appointed in another cause, for his services therein.
Mr. Schaffer was also appointed guardian ad litem in the second accounting which is now before me. He moved unsuccessfully to dismiss the proceeding on the ground of lack of jurisdiction. From the order denying his motion, he appealed. Both the motion and the appeal had a very slight basis and even had the guardian been successful, the infant would not have benefited, so far as I can perceive. Mr. Schaffer will be allowed, out of corpus, a fee of $250 and disbursements of $68.44. *Page 539